[Civ. No. 909. Third Appellate District.—February 29, 1912.]

HARRIET LININGER, Appellant, v. SAN FRANCISCO, VALLEJO AND NAPA VALLEY RAILROAD COMPANY, a Corporation, Respondent.

ELECTRIC CARS—WARNING AT CROSSING—CODE SECTION REGULATING STEAM RAILROADS INAPPLICABLE.—Section 486 of the Civil Code, which was enacted in 1872, applies to a steam locomotive engine on a railroad, and requires a twenty pound bell or a steam whistle to be attached thereto and rung or sounded at a distance of eighty rods from a railroad crossing and continuously until it is passed, and is inapplicable to a train of electric cars, which had no existence when that section was passed, in respect of which the steel gong or compressed-air whistle are the best and most effective devices to give warning of its approach to a crossing.

ID.—COLLISION OF AUTOMOBILE WITH ELECTRIC TRAIN—STRIKING OUT PARTS OF COMPLAINT.—In an action for injuries sustained as the result of a collision of an automobile with an electric train, the court properly struck from the complaint inapplicable matter based on section 486 of the Civil Code, and also evidentiary matter relating to a city ordinance, regulating the movement of trains through the city, which it was not necessary to plead.

Id.—Construction of City Ordinance Regulating Speed at Distance from Drawbridge.—A municipal ordinance of the city of Napa, which provides that "no person shall run or propel any railroad car, locomotive hand-car, or any train of cars, or any trolley car in the city of Napa at a greater speed than four miles per hour, within one thousand feet of any drawbridge," is held to mean, under a reasonable construction, "within one thousand feet, when approaching any drawbridge." If the city council intended to limit the speed for two thousand feet in all, on both sides of the drawbridge, without any reason therefor, the ordinance would be void.

Id.—Plaintiff as Guest of Owner of Colliding Automobile not Chargeable with Contributory Negligence.—Where it appears that plaintiff was merely a guest of the owner of the automobile who was driving it when it collided with the electric train at a crossing, having no control over the running of the same, and that the defendant is chargeable with negligence in the mode of running its train, the plaintiff cannot be chargeable with contributory negligence, even if the owner of the automobile was also negligent in attempting to cross rapidly in front of the approaching train, and his negligence contributed to the accident.

Id.—Improper Nonsuit—Evidence of Defendant's Negligence.—Upon a motion for nonsuit, all of the evidence for the plaintiff, and all inferences therefrom, must be taken as true; and where plaintiff's evidence tends to show that an ordinance of the city limits the speed of the electric train within the corporate limits to the rate of eight miles per hour, and that its speed was greater than that in passing the crossing, and that the plaintiff violated its common-law duty to give reasonable or any warning of its approach to the crossing, it is held that there is sufficient evidence for the plaintiff to establish defendant's negligence in both respects, and there being no evidence tending to show any contributory negligence of the plaintiff, the nonsuit granted upon plaintiff's evidence cannot be sustained.

Id.—Action of Driver of Automobile in View of Sudden Peril.—Although the plaintiff was not responsible as a mere guest of the owner of the automobile, for his action in driving the same when the collision occurred, yet in considering his evidence for the plaintiff, and in judging his conduct at that time, the situation must be viewed as it then appeared to him—that he heard no bell or warning, that he was approaching the crossing at eight or ten miles an hour, and that, when he suddenly saw the car approaching, he feared that his new tires would not hold, and would slide onto the track in front of the train, and therefore judged it best to rush across—he, being thus suddenly put into peril, without sufficient time to consider all the circumstances, is excusable for omitting some precautions, or making an immediate choice under this disturbing influence.

ID.—CONCURRING CAUSE OF ACCIDENT—NEGLIGENCE OF DEFENDANT AS PROXIMATE CONTRIBUTORY CAUSE—QUESTIONS FOR JURY.—Where it is a reasonable inference from plaintiff's evidence that the negligence constituted a proximate contributory cause of the injury to the plaintiff, and that if the negligence of the driver of the automobile, for which plaintiff is not responsible, be regarded as precipitating the disaster, this latter should not be regarded as the sole independent cause, but conjointly with the continuous negligence of the defendant as the concurring cause of the injury, the question of defendant's liability to the plaintiff for negligence should have been submitted to the jury.

APPEAL from a judgment of the Superior Court of Napa County. Henry C. Gesford, Judge.

The facts are stated in the opinion of the court.

Clarence N. Riggins, for Appellant.

John T. York, for Respondent.

BURNETT, J.—The action was for damages for personal injuries as the result of a collision between one of defendant's electric cars and an automobile in which plaintiff was riding as a guest.

Certain portions of the complaint were stricken out, on motion of defendant, and a nonsuit was granted at the close of plaintiff's evidence. The complaint was constructed upon the theory that section 486 of the Civil Code applies to electric cars, and the ruling of the court upon the motion to strike out involved that consideration. The section was enacted in 1872 and provides that "A bell, of at least twenty pounds weight, must be placed on each locomotive engine, and be rung at a distance of at least eighty rods from the place where the railroad crosses any street, road or highway, and be kept ringing until it has crossed such street, road or highway; or a steam whistle must be attached, and be sounded, except in cities, at the like distance, and be kept sounding at intervals until it has crossed the same, under a penalty of $100 for every neglect. . . . The corporation is also liable for all damages sustained by any person, and caused by its locomotives, train or cars, when the provisions of this section are not complied with." Electric cars were not in existence and it does

not appear that they were contemplated at the time this law was passed. It could, therefore, hardly be said that they could have been in the mind of the legislature, but rather that the legislative intent was to require such a bell to be used upon the "locomotive engine" that, forty years ago, was familiar in transportation history. It may be said, also, that the alternative provision in reference to the "steam whistle" is significant in this connection as indicative of the legislative intent to confine the application of the law to "steam locomotives." Of course, the absence of actual intention to make the provision applicable to electric cars may not be conclusive of the question, but it is, manifestly, an important consideration. The subject received careful attention in *San Francisco etc. R. Co.* v. *Scott,* 142 Cal. 222, [75 Pac. 575], wherein the question concerned the application to street railroads of a provision in the constitution in reference to "railroads," etc. Through Mr. Justice Shaw, the court said: "There was therefore clearly an absence of actual intention in using the phrase 'railroads operated in more than one county' to make a provision which also should apply to street railroads, if, peradventure, in the future one should come within the description. If the word 'railroads' is to be extended so as to include street railroads, it is not because of the actual intention of those who framed and adopted the constitution to give the word that meaning, but because of the rule of law that where a provision is made by law for a certain class of subjects, and thereafter a new but similar subject is created, coming within the general description, and within the particular purpose and object of the law, it is to be considered as having been intended to be included within the original description. Thus, for illustration, a statute which imposes a penalty for 'feloniously driving any sort of carriage' was held to include and apply to bicycles, although at the time the statute was adopted bicycles had not yet come into existence. (*Taylor* v. *Goodwin,* L. R. 4 Q. B. D. 228.)" To determine whether the subject falls within the general description, resort must be had, as stated in the Scott case, *supra,* to the "words used, the context, the object in view, and the evils that were intended to be remedied." It is contended by appellant that the words used, "locomotive engine," are comprehensive enough to include the vehicle involved herein, consisting of a locomotive and passenger-car

combined in one.  It may be conceded that the description of the car given by one of the witnesses brings it within the scope of the definition of the words, "locomotive engine," quoted from Webster's New International Dictionary of 1910, but when we consider the object to be accomplished by the statute and the evil intended to be remedied, we are satisfied that it would be unreasonable to give it the interpretation contended for by appellant.  It is, no doubt, true that the purpose of the code section is the protection of the public.  The legislature intended that the danger of accidents at railroad crossings should be obviated as far as practicable.  To subserve a public need in this respect, the provision in question was enacted. But in consequence of the comparatively recent important development in the industrial application of electricity, we have this new and better motive power requiring a peculiar mechanical contrivance for the purpose of transportation, and it is found that the steel gong and the compressed-air "whistle" are the simplest and most effective devices for giving warning at the approach to a crossing.  To require a twenty pound bell to be installed in an electric car would impose an unnecessary burden upon the owner and—what is more important—would not inure to the safety or benefit of the public.  There is no reason why, therefore, the provision in question should be extended, beyond the obvious intention of the legislature, to include the situation that confronts us here.  Some cases are cited to the point by both parties, but we deem it unnecessary to review them in detail.  They involve somewhat different circumstances.

In *Fallon* v. *West End St. Ry. Co.*, 171 Mass. 249, [50 N. E. 536], however, the supreme court of Massachusetts says: "But we think that by the words 'locomotive engine or train upon a railroad' must be understood a railroad and locomotive engines and trains operated and run, or originally intended to be operated and run, in some manner and to some extent by steam. This, undoubtedly, was the sense in which the words were used by the legislature when the statute was enacted; and we do not feel justified now in giving to them the broad construction for which the plaintiff contends."

We think there was no error in striking from the complaint the ordinance regulating the movement of trains through the city.  It constituted evidentiary matter and it was not neces-

sary to plead it.   (*Cragg* v. *Los Angeles Trust Co.*, 154 Cal. 663, [16 Ann. Cas. 1061, 98 Pac. 1063].)

A portion of ordinance 460 of said city provides that "No person shall run or propel any railroad car, locomotive, handcar, or any train or cars, or any trolley car, in the city of Napa, at a greater rate of speed than four miles per hour within one thousand feet of any drawbridge." The trial court construed this to mean "within one thousand feet when approaching any drawbridge." We think this is the rational view of the provision. In its enactment the legislative body had in mind the crossing of a drawbridge by a train of cars and the peril that is incident thereto. In the construction of the ordinance, to ascertain the legislative intent, regard must be had not simply to the exact phraseology but to the general tenor and scope of the legislative scheme embodied in the statute. (*Oakland* v. *Oakland Water Front Co.*, 118 Cal. 189, [50 Pac. 277].) "If the act is susceptible of two constructions, one leading inevitably to mischief or absurdity and the other consistent with justice, sound sense and wise policy, the former shall be rejected and the latter adopted." (*In re Mitchell*, 120 Cal. 386, [52 Pac. 800].) As stated by respondent: "Section 460 requires a more restricted rate of speed when the car or train is within one thousand feet of any drawbridge, than when it is passing through any other portions of the city, and while the drawbridge and the distance of one thousand feet on either side of it may be in the most sparsely settled portion of the city, and might be located wholly without the congested traffic centers and indeed while the track might be wholly located on private rights of way and be not crossed by any highway or other grade crossings, yet if the construction sought to be given it were to prevail, the city council intended to limit the speed for two thousand feet, without any reason whatever therefor. Such an ordinance would be void. (*Berry* v. *Chicago etc. R. R. Co.*, 90 Iowa, 106, [48 Am. St. Rep. 419, 57 N. W. 680] ; *Evison* v. *Chicago etc. R. R. Co.*, 45 Minn. 370, [11 L. R. A. 434, 48 N. W. 6] ; *Meyers* v. *Chicago etc. R. R. Co.*, 57 Iowa, 555, [42 Am. St. Rep. 50, 10 N. W. 896].)"

It is matter of common knowledge that, more or less frequently, frightful accidents occur at these crossings in consequence of the draw being open, and it was to minimize this

peril that the ordinance was passed.   The trial court's construction of the provision is the only reasonable one, as we view it, and it is consistent with the best interests of the public.

Another more serious question remains to be considered. As to the law of negligence involved in the case, there seems to be no serious controversy between the parties.   It cannot be maintained from the evidence that the plaintiff herself is chargeable with contributory negligence.   As already stated, she was the guest of other parties and she had no control over the driver of the automobile.   She was not aware of the approach of the car until it was too late for her to escape.   But if there were a conflict in the evidence as to this, we would, of course, on the appeal from the judgment of nonsuit, be required to give full credit to every circumstance in her favor. Among other things, she testified that she sat on "the left back seat," that she knew nothing "about the running or management of automobiles," that she had never been in Napa before, that she knew nothing about the streets or location of the car lines, that she did not remember of either seeing or hearing defendant's car, that during the entire ride she said nothing to the driver in reference to the manner of driving the automobile, and she could not recall the immediate circumstances surrounding the accident.

The only other theory upon which the order granting the motion for a nonsuit can be justified is that all of the evidence shows that the accident was due solely to the negligence of Mr. Wisecarver, the owner and chauffeur of the automobile. It is not sufficient, manifestly, that the evidence may disclose that his negligence contributed to the accident, as his want of care cannot be imputed to plaintiff.   In this respect the law admittedly is, as stated by the supreme court of the United States, in *Little* v. *Hackett*, 116 U. S. 366, [29 L. ed. 652, 6 Sup. Ct. Rep. 391].   There the party injured hired a public hack, but there is no difference in principle between that case and this.   Through Mr. Justice Field the court said: "A person who hires a public hack and gives the driver directions as to the place to which he wishes to be conveyed, but exercises no other control over the conduct of the driver, is not responsible for his acts or negligence, nor prevented from recovering against a railroad company for injuries suffered from a

collision of its train with the hack, caused by the negligence of both the managers of the train and of the driver." It must be true, as stated therein, that "responsibility cannot, within any recognized rules of law, be fastened upon one who has in no way interfered with and controlled in the matter causing the injury. From the simple fact of hiring the carriage or *riding in it* no such liability can arise. The party hiring or riding must in some way have co-operated in producing the injury complained of before he incurs any liability for it."

But it is not denied that this is the law. This feature of the case may therefore be dismissed from further consideration. The vital inquiry remaining is, Does the record contain any evidence from which a rational inference may be drawn that the negligence of respondent contributed to the accident? We think this must unquestionably be answered in the affirmative. The law as to a nonsuit has been so frequently declared as to hardly need repetition. It is fully considered by this court in *In re Daly's Estate,* 15 Cal. App. 329, [114 Pac. 787]. Nowhere, probably, has the rule been stated more strongly than in the *Estate of Arnold,* 147 Cal. 583, [82 Pac. 252]. The gist of it is that all the evidence in favor of the one resisting the motion must be taken as true, and if contradictory evidence has been given it must be disregarded. In the application of this rule to the evidence we must bear in mind that there are two features involved in the consideration of the question of respondent's negligence. These relate to the speed with which the car was traveling and the presence or absence of any warning given as the car approached the crossing.

An ordinance of the city limits the speed within the corporate limits to the rate of eight miles an hour. "Where a train is run at a crossing at a rate of speed in excess of that limited by statute or ordinance, it is in most jurisdictions negligence *per se.*" (33 Cyc. 976.) That is the law in this state. (*James* v. *Oakland Traction Co.,* 10 Cal. App. 785, 799, [103 Pac. 1082].) But, regardless of the ordinance, it was clearly the duty of defendant to use ordinary care in the operation of its cars for the purpose of avoiding injury to others and not to run them at a rate of speed which an ordinarily careful man would deem dangerous to others. (33 Cyc. 971.) The accident occurred in a business section of the city and at a point

where vehicles were frequently crossing the railroad and dan-ger of collision was naturally to be apprehended. If there is any evidence, therefore, that the car was approaching the crossing at a rate of speed in excess of eight miles per hour, it would be a justifiable inference that defendant was negligent.

As to the second point, it is not disputed that the law is as stated in 33 Cyc. 956, as follows: "It is the common-law duty of those in charge of a train of cars, for nonperformance of which the railroad company is responsible, when approaching a public crossing, to give notice of the approach by all reason-able warnings, such as by blowing a whistle, ringing a bell, signal lights, or by such other devices as may be sufficient to give timely warning to travelers of their approach, so as to afford time for all approaching to stop in a place of safety. . . . This duty to give timely warning exists, notwithstanding there is no statute or ordinance requiring it." There is evi-dence in the record, which cannot be ignored, of negligence on the part of the railroad company in each of these respects. Without segregating it as to these two features, we proceed to exhibit a portion of said evidence. It was shown by the tes-timony of the general superintendent that the company re-quired its cars to be run according to a certain schedule or timetable calling for a speed of more than nine miles an hour if they traveled continuously. With a proper allowance for stops it is a fair inference that this schedule would demand a speed of eleven miles or more. Robert Woods, who was near the scene of the accident, testified that the car came down the street at the rate of "about eleven or twelve miles an hour and the automobile was going about eight or ten miles an hour"; that he did not hear any alarm bell at any time from the time the car started at Main street until after the accident, except he thought he heard the bell just at the moment of collision, believing that it was caused by "a mud fender or wheel or something" striking the bell. Mabel Smith also testified that "the car was coming pretty fast" and she did not hear any alarm. Charles Steere was asked the question: "Did you hear any noise at all?" and he answered: "Nothing only the rumble of the car. I think if the bell had rung from where I was standing I could have heard it. I don't think there was any bell rung at all, because if there was I would have heard it, because I was within five, I guess, or ten feet of the corner."

Other witnesses testified to the same effect, but we will not quote any further except to give a part of the testimony of C. L. Wisecarver, the driver of the automobile. He said he approached the railroad at the rate of eight or ten miles an hour; that the defendant's car when he first saw it was six or seven feet from the corner; that he did not hear any bell; that he was about twenty-five or thirty feet from the railroad track when he first saw the car; that when he saw the car he didn't think he could stop—he had new tires and was afraid that they wouldn't hold; that he "would slide across onto the track in front of the car," and therefore he put on speed and tried "to get across the track in front of the car." In judging of his conduct we must, of course, view the situation as it appeared to him. Being suddenly put into peril "without having sufficient time to consider all the circumstances, he is excusable for omitting some precautions, or making an immediate choice under this disturbing influence, although if his mind had been clear he ought to have done otherwise." (*Schneider* v. *Market St. Ry. Co.,* 134 Cal. 482, [66 Pac. 734].) But, as already seen, his negligence is not attributable to plaintiff and, as far as this appeal is concerned, we may admit that he was negligent and the result will not be affected in the least.

Indulging, therefore, as we must, every favorable inference fairly deducible from the strongest showing made by plaintiff, we must hold as established facts that at the time of the accident defendant was operating its car at an excessive rate of speed and without giving the warning, as it approached the crossing, that the law exacts. From these premises it is at least a rational conclusion that the negligence of defendant constituted a proximate contributory cause of the injury to plaintiff. In other words, giving full credit to the showing made by plaintiff, it is not an unreasonable inference that the injury to appellant was a natural and probable consequence of the wrongful act of the railroad company, and that if the negligence of the driver of the automobile may be regarded as precipitating the disaster, this latter should not be regarded as the sole, independent, but conjointly with the continuous negligence of respondent, as the concurring cause of the accident. (*Pastene* v. *Adams,* 49 Cal. 87; *Tompkins* v. *Clay St. Ry. Co.,* 66 Cal. 163, [4 Pac. 1165]; *Merrill* v. *Los Angeles*

*Gas & Elec. Co.,* 158 Cal. 499, [139 Am. St. Rep. 134, 111 Pac. 534].)   As we view it, therefore, the question of defendant's liability should have been submitted to the jury.

It is needless to add that if upon the same evidence the case had been submitted and decided by the jury in favor of defendant or if a verdict in favor of plaintiff had been set aside by the court, we could not say that the decision was unsupported, but, in view of the well-established rule in reference to a motion for a nonsuit, we can see no escape from the conclusion that the case was improperly withdrawn from the jury.   The judgment is therefore reversed.

Hart, J., and Chipman, P. J., concurred.