[Civ. No. 1778.   Third Appellate District.—March 4, 1918.]

EDWARD DROUILLARD, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), et al., Appellants.

NEGLIGENCE—DEATH OF PASSENGER IN AUTOMOBILE—COLLISION AT RAILROAD CROSSING—CARE EXERCISED BY DECEASED—LACK OF EVIDENCE —PRESUMPTION.—In an action for damages for the death of a person while riding in an automobile driven by another in a collision with a detached engine at a railroad crossing, it must be presumed, in the absence of evidence to the contrary, that the former either attempted to warn the driver or to leave the car, in view of section 1963 of the Code of Civil Procedure making it a rule of evidence that a person is presumed to take ordinary care of his own concerns.

ID.—CONTRIBUTORY NEGLIGENCE—EVIDENCE.—Where in such an action plaintiff shows that the death was the proximate result of the negligence of defendant, he is not required to negative the claim of contributory negligence.

ID.—VERDICT FOR PLAINTIFF—SPECIAL FINDING AS TO ABILITY TO SEE APPROACHING TRAIN—WANT OF INCONSISTENCY.—In an action for damages for death of a passenger in an automobile struck by a train at a railroad crossing, a special finding that if deceased had looked he could have seen the approaching locomotive is not inconsistent with a general verdict against the defendant, since it does not compel the conclusion that the deceased was negligent.

GENERAL VERDICT—SPECIAL FINDINGS—CONSTRUCTION.—A general verdict and special findings should be reconciled, if possible, and no specific finding should operate to overthrow the general conclusion of the jury unless they are entirely inconsistent and irreconcilable.

APPEAL from a judgment of the Superior Court of Butte County, and from an order denying a new trial. H. D. Gregory, Judge.

The facts are stated in the opinion of the court.

A. F. Jones, George F. Jones, and Henley C. Booth, for Appellants.

J. Oscar Goldstein, for Respondent.

BURNETT, J.—This action was for damages for the death of Edward Drouillard, a minor, and the verdict of the jury was for the plaintiff in the sum of seven thousand dollars. The accident occurred at a grade crossing just outside the town of Durham while the deceased was in the employ of one Thomas Fimple, the former riding on the back seat of an automobile driven by the latter. The machine was struck by a detached locomotive in charge of and being driven by the defendant McKnight while on his way from Chico to Roseville. Fimple and young Drouillard were the only occupants of the machine, and they were both killed by the collision, the former's body being found about 150 feet from the point of the accident and the latter being carried on the cowcatcher for a distance of 1,113 feet, and dying within a few minutes after being taken therefrom.

There is abundant evidence of the negligence of appellants. Indeed, with commendable candor their able counsel concede that the finding of the jury in that respect is legally supported. The case seems to have been tried with unusual care, and not a single ruling of the court as to the admissibility of evidence, nor is its action in reference to the instructions challenged, the only contention herein being that, as a matter of law, it should be held that the deceased was guilty of contributory negligence, and furthermore, that certain special findings of the jury are inconsistent with and control and render ineffective the general verdict.

To appreciate the significance of the question as to the contributory negligence of the deceased, it may be well to call attention to these facts disclosed by the evidence: There were two railroad tracks at the crossing where the accident occurred—one the main-line track and the other the house track, which extended to certain buildings for freight purposes. The centers of these are about forty-four feet apart. There were certain buildings near the house track which obstructed the vision of one coming from the west and looking

north, and this condition was augmented at the time of the collision by the presence of a box-car, ten feet in width, standing upon said house track. At any rate, it may be said that the view of the occupants of the machine in the direction of the approaching locomotive was intercepted until they reached a point about fifty feet from the main track. There they stopped, and both were seen looking north up the track, from which position they could see the main track for a distance of one hundred and fifty or two hundred feet, and it is fair to say from the evidence that if it had not been for the obstruction of the view by the box-car, they would have seen the track for a distance of probably two miles. Having stopped near the house track and not being apprised of any danger, they proceeded on till the collision occurred on the main track. There was a space of thirty-five or forty feet over which they passed just prior to the accident wherein they had an unobstructed view of the approaching locomotive, and what occured within this interval is really the subject of the whole controversy in the case. The time was exceedingly short—not over five seconds at the rate they were traveling, while the locomotive was coming at a tremendous speed of probably fifty miles an hour or seventy-three feet per second.

The direct evidence throws little light, if any, upon the question as to what during this interval the deceased did to protect himself against the impending menace and to secure his own safety. An important witness for the plaintiff, who was standing about one hundred feet away, where he had a clear view of the situation, testified: "I noticed a man coming with an automobile and I noticed he slowed down just before he started to pull down to the track, looking up the track, and when he started he came over the track and just as he got on the track the engine struck the car and threw it"; that when the driver stopped, the engine was over one thousand feet away, that no bell was rung and no whistle was blown, and that "the old man was sitting in the front seat and the boy in the back seat." The only other witness who pretends to have seen the automobile and its occupants within the brief interval was the defendant, McKnight, who had charge of the locomotive, but he admits that when he first saw the automobile it was right on the rail, and that he struck the machine as if in an instant, that he did not have a good view of the automobile, but that he saw Drouillard

leaning over the front seat as if to talk to Mr. Fimple.  "I saw him turn his face to the engine when we hit him, that was all there was to it; his eyes looked like two balls of fire; I couldn't say whether he was paralyzed or not—the expression looked that way to me."

In view of this situation must it be said that Drouillard did not exercise that care which the law exacts of everyone in a similar position?  In deciding that question we must of course distinguish between the driver and the guest.  For the purposes of the case it might be conceded that within the rule often announced in reference to railroad crossings, Fimple was chargeable with such negligence that no action in his behalf would lie against the railroad company, but this concession would not militate against the view that the same defense is not available in this action.  In other words, certain things are sometimes required of the driver to satisfy the requirements of ordinary care and prudence that it would be unreasonable to demand of the guest who has no control over the driver and who is not directing the movements of the machine.  This is necessarily so, and we do not dwell upon it, as it is sufficient to refer to *Lininger* v. *San Francisco etc. R. R. Co.*, 18 Cal. App. 411, [123 Pac. 235], *Thompson* v. *Los Angeles R. R. Co.*, 165 Cal. 748, [134 Pac. 709], and *Bryant* v. *Pacific Elec. Ry. Co.*, 174 Cal. 737, [164 Pac. 385], wherein the subject is fully discussed.

But, of course, it is true, as recognized by all the authorities, that Drouillard was required to exercise ordinary care for his own safety, and whether he exercised such care is a question of fact, and unless the evidence is all one way, this question must be submitted to the jury.  (*Parmenter* v. *McDougall*, 172 Cal. 306, [156 Pac. 460].)

"No one can be allowed to shut his eyes to danger in blind reliance upon the unaided care of another without assuming the consequences of the omission of such care."  (*Fujise* v. *Los Angeles Ry. Co.*, 12 Cal. App. 207, [107 Pac. 317].)

What, then, within the interval of four or five seconds should Drouillard have done to acquit himself in the eyes of the law?  The contention of the appellants at the oral argument was that he should have looked up and down the track and discovered the approach of the locomotive and warned the driver to stop.  It may be debatable whether under the circumstances he was required to do even this much.  It

might be plausibly argued that he would be justified in believing that the driver would be apprised of the danger and would stop his machine before attempting to cross the track. But granting that appellants' contention is not unreasonable, even conceding that when he became convinced that the driver did not intend to heed the warning, it was the duty of Drouillard to attempt to leave the machine; then, we must, for the purposes of this appeal, hold that Drouillard did just what appellants contend he should have done. The case would be no different if a witness had testified to such facts. This follows necessarily from the presumption—which is a rule of evidence—"that a person takes ordinary care of his own concerns." (Code Civ. Proc., sec. 1963.) Of course, this is a controvertible presumption, but until controverted it is evidence which the jury is bound to accept. (*Crabbe* v. *Mammoth Channel Gold Min. Co.*, 168 Cal. 500, [143 Pac. 714].)

There are other cases illustrating the application of the presumption to the question of the conduct of a decedent. It is sufficient to refer to *Baltimore & Potomac R. R. Co.* v. *Landrigan*, 191 U. S. 461, [48 L. Ed. 262, 24 Sup. Ct. Rep. 137], wherein the court said: "In the absence of all evidence tending to show whether the plaintiff's intestate stopped, looked, and listened before attempting to cross the south track, the presumption would be that he did. But that presumption may be rebutted by circumstantial evidence, and it is a question for the jury whether the facts and circumstances proved in this case rebut that presumption, and if they find that they do, they should find that he did not stop and look and listen. In order to justify them in finding that he did not, all the evidence tending to show that should be weightier in the minds of the jury than that tending to show the contrary."

Herein there was no evidence that the deceased failed to do what the most stringent rule of ordinary care demands, and, therefore, there can be no contention that said presumption was overcome. Indeed, if there were no such presumption, the implied finding of the jury that Drouillard was not chargeable with contributory negligence would demand concurrence, for the reason that it is an affirmative defense which the defendants are called upon to establish. Having shown that his death was the proximate result of the negli-

gence of the defendants, the task of the plaintiff was complete, and he was not required to negative the claim of contributory negligence. As is well known, the rule in this state, as to that matter, differs from some other jurisdictions.

We can perceive no greater merit in the other contention of appellants that the special findings are inconsistent with the general verdict. Of course, the rule is that they should all be reconciled, if possible, and that no specific finding should operate to overthrow the general conclusion of the jury unless they are entirely inconsistent and irreconcilable.

The matter is thoroughly discussed in *Antonian* v. *Southern Pacific Co.*, 9 Cal. App. 718, [100 Pac. 877], by the presiding justice of this court, to which it is sufficient to refer. Among other cases that might be cited we may add the recent decision of the supreme court in *Law* v. *Northern Assur. Co.*, 165 Cal. 394, [132 Pac. 590].

That no such inconsistency exists may be seen by exhibiting the three special interrogatories and their answers to which the argument is addressed:

"4. Did William Drouillard do anything for his own protection or safety after the automobile passed the box-car and before it reached a point where it could have been struck by the locomotive passing on the main track? Answer. Yes."

"No. 5. If your answer to question No. 4 is 'yes'—then what did William Drouillard do for his own protection? Answer: From defendants' testimony Drouillard was leaning forward against front seat, either warning Mr. Fimple of the approaching danger, or in the act of jumping."

"No. 6. If William Drouillard had looked north toward the approaching locomotive at any point after the locomotive passed the box-car, and before it reached the point where it could be struck by the locomotive on the main track, could he have seen the approaching locomotive? Answer: Yes."

In fairness to appellants it should be remarked that they insist that only the last of these is inconsistent with the general verdict. But they are clearly mistaken in the contention. Indeed, the jury could not possibly have made a different answer to the interrogatory. That he could have seen the locomotive if he had looked is beyond question, since there was nothing to obstruct his view.

Appellants argue upon the theory that the finding necessarily implies that Drouillard did not look, and therefore omitted a plain duty. But the answer to question No. 6 is not inconsistent with the contention that he did look and did observe the approach of the locomotive. From the form of the question you might infer that Drouillard neglected such duty, but it does not compel that conclusion.

Nor can it be said that the jury was unwarranted in its answer to any of these interrogatories. The point is made, especially in reference to question No. 5. It is argued that the *answer* is not a fair inference from the testimony of Mr. McKnight. But, it is apparent that his testimony is not necessarily opposed to the findings of the jury. Accepting as a fact the statement by him that Drouillard was leaning forward as if talking to the driver, it is, of course, no violent inference that he was warning Fimple of the approaching danger or even that he was about to attempt to leave the machine. But in addition it must be borne in mind that McKnight was an interested witness, and it is not unfair to say that he would naturally favor appellants as far as possible. He would, indeed, be under great temptation to support the theory of appellants at the price even of the truth.

At any rate, the jury was the exclusive judge of his credibility and might accept one and reject another portion of his testimony.

Moreover, we may disregard the explanatory part of the answer if it be deemed an improbable inference from the testimony of Mr. McKnight, and we shall have left the simple affirmative, which is supported by the presumption hereinbefore suggested.

Again, if it be conceded that the whole answer must be disregarded because the testimony of McKnight does not warrant it, the result is not affected, for the reason that the other findings are supported by the evidence and lead necessarily to the conclusion that plaintiff is entitled to the judgment.

It may be said that the case has been argued extensively and with ability by counsel, and while their briefs have been examined with care, we see no necessity for more elaborate treatment of the questions involved or for the specific consideration of the distinguishing features of the various cases which have been cited.

It seems clear that we are called upon to determine the application of a few well-settled principles of law, and that there is no legal ground for interfering with the result reached by the lower court.

The judgment and order are therefore affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 3, 1918.