[Civ. No. 4955. First Appellate District, Division Two.—December 19, 1924.]

## J. EDWIN LITTLE et al., Respondents, v. J. YANAGI-SAWA, Appellant.

[1] NEGLIGENCE—PEDESTRIAN CROSSING STREET—PRESUMPTION OF DUE CARE — EVIDENCE.—In this action for damages for the death of plaintiff's daughter as the result of injuries received when she was struck by defendant's automobile while crossing a public street at an intersection, notwithstanding the evidence as to the conduct of the deceased was scanty, in the absence of contradiction the presumption of law was that she used due care for her own protection and preservation.

[2] ID.—DUE CARE — MISTAKE OF JUDGMENT — PROVINCE OF JURY—NONSUIT. — In such action, the presumption of law that the deceased used due care coupled with the other facts in evidence made it reasonable for the jury to conclude that deceased, before leaving the curb, looked in the direction from which defendant was approaching and seeing the automobile quite a distance away from her up the hill concluded that she had ample time to cross the street and attempted to do so, making a mistake of judgment due to her inability to judge the speed of the automobile; and under such circumstances, it was for the jury to determine whether the deceased was guilty of contributory negligence, and the trial court properly denied defendant's motion for a nonsuit.

1. Presumption in death action as to exercise of due care by person killed, note, 33 L. R. A. (N. S.) 1219, 1230. See, also, 8 Cal. Jur. 996.

[3] ID.—PARENT AND CHILD—DEPENDENCY—EVIDENCE—DAMAGES.—In such action, the fact that the father was earning a living for himself and his wife and that they were not dependent upon the deceased for support did not deprive them of the right to recover damages; and, in view of the evidence showing that the deceased daughter was twenty-one years of age, that she lived with her parents and assisted her mother with the household duties when her school work permitted, and gave her parents the comfort and pleasure of her society during her leisure hours, that she was a graduate of the high school and at the time of her death was a student at an Arts and Crafts School, as the result of which she would soon have a substantial earning capacity and be in a position to contribute to the support of her parents if such contribution became necessary, the verdict of five thousand dollars was not excessive.

[4] ID.—FUNERAL EXPENSES—EVIDENCE—DAMAGES.—In such action, it was not error to admit evidence of the amount paid by the plaintiffs for the funeral expenses of their daughter, who met her death as the result of defendant's negligence.

(1) 29 **Cyc.**, p. 596, n. 29.  (2) 28 **Cyc.**, p. 49, n. 47; 29 **Cyc.**, p. 641, n. 17.  (3) 17 **C. J.**, p. 1350, n. 7; 29 **Cyc.**, p. 1641, n. 88, p. 1653, n. 10.  (4) 17 **C. J.**, p. 1339, n. 27.

APPEAL from a judgment of the Superior Court of Alameda County.  Mortimer Smith, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Snook & Brown and Walter H. Linforth for Appellant.

James M. Koford and A. J. Woolsey for Respondents.

**3.** Measure of damages in action for wrongful death, note, 12 **Am. St. Rep.** 375.

Age of child as affecting capacity to perform services as issue in action for wrongful death by parents, notes, Ann. Cas. 1913D, 470; Ann. Cas. 1918D, 1184.

Measure of damages in action for wrongful death by parents of minor child, notes, Ann. Cas. 1912C, 58; Ann. Cas. 1916B, 532.

Excessive or inadequate damages in action for wrongful death, note, **L. R. A.** 1916C, 820.  See, also, 8 **R. C. L.** 835, 838; 8 **Cal. Jur.** 1016.

**4.** Funeral expenses as element of damages in action for wrongful death, notes, 6 **Ann. Cas.** 201; 13 **Ann. Cas.** 744.  See, also, 8 **Cal. Jur.** 1010.

LANGDON, P. J.—This is an appeal by the defendant from a judgment for $5,000 against him in an action brought to recover damages for the death of the daughter of plaintiffs. It is alleged that said death was caused by the negligence of defendant in driving an automobile in the city of Oakland, California.

The accident happened at the intersection of Moraga Avenue and Pleasant Valley Avenue. Moraga Avenue enters Pleasant Valley Avenue with a sharp curve. At about 8 o'clock in the morning on November 15, 1922, the defendant drove a Ford automobile down Moraga Avenue and into its intersection with Pleasant Valley Avenue at a speed variously estimated at twenty and twenty-five miles an hour. He came down quite a grade as he approached this intersection and did not sound any warning signal as he descended the hill, approached the intersection or rounded the curve.

Dorothy Little, the twenty-one year old daughter of plaintiffs, was crossing Moraga Avenue at the intersection and was struck and dragged by defendant's automobile, suffering injuries from which she died in a few days.

Another feature of the case is that along the curb at the intersection of the streets are twelve trees, which at the time of the accident were fifteen feet high and had been trimmed into a mushroom shape, so that they hung down to about four or five feet from the ground. Because of the curve in the street, these trees obstructed the vision of one crossing at the intersection so that he could not see up Moraga Avenue after he had reached a point about in the middle of the street. In other words, it appears in evidence that an automobile coming down Moraga Avenue on the right-hand side of the street could be seen by a person at the time he started across the intersection and until he reached about the center of the street, when the view was lost around the curve because of the interference of the trees. Moraga Avenue is thirty-two feet wide, so for about sixteen feet of the crossing it would be impossible to see a vehicle coming down the hill toward the place of intersection.

At the time of the accident the deceased was accompanied by her cousin, Miss Fake, who testified at the trial that before she and deceased started across the street, Miss Fake looked up Moraga Avenue and saw the automobile of the defendant several hundred feet up Moraga Avenue coming

down the hill. She did not know whether deceased looked and saw the automobile or not. Miss Fake did not again look at the automobile, but continued across the street with deceased and was not aware of the proximity of the automobile until both girls were struck by it. Miss Fake stated that she did not know whether deceased looked toward the north, the direction from which the automobile came, while she was crossing the street, and that she (Miss Fake) did not look in that direction except as she started to cross; that when they got halfway across, they quickened their pace and were struck about seven feet away from the curb.

Appellants do not deny that the record shows negligence upon the part of the defendant, but it is contended that it also shows contributory negligence on the part of the deceased, proximately causing the injury. It is contended that it was negligence as a matter of law for deceased not to have looked in the direction from which traffic might be expected when she reached the center of the street and was about to continue across with her view to the north obstructed; and because the record is silent as to whether deceased did or did not look to the north upon reaching the center of the street, appellant takes both horns of the dilemma and argues that if deceased did not look she was negligent, and if she did look she must have seen the automobile and was negligent in attempting to cross. Appellant then argues the question of proximate cause, contending that the proximate cause of the injury and death was the negligence of deceased.

Defendant moved for a nonsuit after the plaintiffs' case was rested; this motion was denied. The defendant declined to offer any testimony other than a map of the vicinity of the accident. The case was submitted to a jury and a verdict returned for plaintiffs. The question thus presented is as to the correctness of the court's ruling upon the motion for nonsuit, and we think this question but presents another: Is there any evidence from which a jury might reasonably draw the conclusion that the deceased was in the exercise of ordinary care? We think there was such evidence. [1] True, the evidence regarding the conduct of deceased is scanty, but in the absence of contradiction we have the presumption of law that deceased used due care for her own protection and preservation. (*Crabbe* v. *Mammoth Channel G. Min. Co.,* 168 Cal. 500, 506 [143 Pac. 714]; *Drouillard* v.

*Southern Pac. Co.*, 36 Cal. App. 447 [172 Pac. 405]; *Ross* v. *Railways Co.*, 47 Cal. App. 753, 761 [191 Pac. 703].)

[2] This presumption and the facts appearing in the record make it reasonable for the jury to conclude that deceased looked north before leaving the curb and seeing an automobile quite a distance away from her up the hill concluded that she had ample time to cross the street and attempted to do so, making a mistake of judgment due to her inability to judge the speed of the automobile.

The situation thus presented comes directly within the rule laid down in *Burgesser* v. *Bullock's,* 190 Cal. 673 [214 Pac. 649], wherein it is said: "It is sufficient for the purposes of a new trial in this case to say that where the evidence showed that the decedent looked in the direction of the approaching automobile and saw the automobile, and, nevertheless, proceeded to cross the street, it is for the jury to say whether or not his conduct with reference to the approaching automobile was, under all the circumstances at the time and place and conditions of the traffic, negligence on the part of the decedent."

In the case last cited our supreme court considered most of the cases relied upon by appellant upon this appeal and found them not in conflict with the rule above quoted. The matter was one for the jury's determination, therefore, and the motion for nonsuit was properly denied.

[3] The only other contention requiring discussion is that the verdict is excessive. As before stated the verdict was for $5,000. The deceased was twenty-one years old. She lived with her parents and assisted her mother with the household duties when her school work permitted and gave to her parents the comfort and pleasure of her society during her leisure hours. She was a graduate of the high school and at the time of her death was a student at the Arts and Crafts School. It is evident that a girl with this training would soon have a substantial earning capacity and be in a position to contribute to the support of her parents if such contribution became necessary. But the appellant urges that the record discloses that the father was earning a living for himself and his wife and that the parents were not dependent upon this daughter for support. This argument is answered in the case of *Alkeson* v. *Hackson Estate,* 72 Wash. 233 [130 Pac. 102], wherein it is said: "But since adversity and misfortune are sometimes the accompaniments of life, as well as prosperity and success, there is another side to the

picture. It is possible that the respondents may lose the property they have accumulated, and at the same time their health and ability to earn money. If such a misfortune should befall them, might it not be said that the daughter's earnings, had she lived, would have greatly exceeded her cost of maintenance? And who shall say that such a misfortune may not befall them? And if the probability exists, why may not a recovery be based thereon? There is, of course, no certain measure of damages in cases of this character; but, notwithstanding this difficulty, the great weight of authority is that a substantial recovery may be had.''

[4] The appellant asserts in his brief that error was committed by the trial court in admitting evidence of the amount paid by the plaintiffs for the funeral expenses of their daughter. In support of his position he quotes from *Munro* v. *Dredging Co.*, 84 Cal. 523 [18 Am. St. Rep. 248, 24 Pac. 303]. An examination of that case discloses that the court, in using the language quoted by appellant herein, was stating the holding of an English case decided under the Lord Campbell Act, and tracing the history of an action for damages brought by heirs at law or personal representatives of a deceased person whose death had been caused by the wrongful act of another. The case is not authority for appellant's position, the question involved and decided therein being whether or not recovery could be had for grief and mental suffering of surviving parents.

On the other hand, the case of *Koehl* v. *Carpenter*, 47 Cal. App. 642 [191 Pac. 43], treats the question raised by appellant herein as settled in this state, saying: ''Lastly it is contended that the damages should not have included the amount paid to the undertaker, because the bill was not paid by either of the plaintiffs. The allegation of the complaint was that the expenses had been incurred. This was sufficient to support the finding that the plaintiffs had been damaged to the amount of $1,000, including funeral expenses of $272.50.''

The judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 16, 1925.

All the Justices, except Lennon, J., concurred.