[Civ. No. 12580.   Second Dist., Div. One.   Oct. 3, 1941.]

WINIFRED K. WISWELL, Appellant, v. MARVIN P. SHINNERS et al., Respondents.

James V. Brewer for Appellant.

Betts & Garrison and Charles Peckham for Respondents.

WHITE, J.—This appeal is taken from a judgment for defendants upon a directed verdict returned by the jury in an action brought by the widow of Wilkens W. Wiswell to recover damages for the death of said decedent, who was killed when struck by an automobile driven by defendant Marvin P. Shinners, who at the time was acting as the agent and employee of defendant Harold E. Shugart Company.

Upon completion of the testimony offered by both sides the defendants moved the court to direct the jury to return a verdict in favor of such defendants. Said motion was grounded on the claim that "the evidence at this time fails to establish a *prima facie* case to go to the jury, in that the evidence fails to establish a *prima facie* case of negligence against the defendant, Mr. Shinners, and fails to establish that any negligence on his part was the proximate cause or a proximate cause of the accident in question; and in that the uncontradicted evidence in this case establishes that the deceased, Mr. Wiswell, was himself negligent, and that such negligence contributed proximately to the happening of the

accident." The court granted this motion, and it is the correctness of such ruling that is here challenged.

For a proper understanding of the questions involved on this appeal, the facts of the case may be thus epitomized: At about 1:45 o'clock on the afternoon of October 21, 1938, the day being clear and the street dry, defendant Shinners was driving his automobile west on Sixth Street in the city of Los Angeles at a rate of speed estimated by all witnesses as not exceeding 25 to 30 miles per hour. The automobile was traveling along the west-bound street car tracks, with the left wheels between the rails of the east and west-bound tracks. There were but two eye-witnesses to the accident who testified. One was the defendant driver of the automobile, who stated at the trial that he drove west on Sixth Street and approached the intersection of Grand View Street where the accident occurred; that there was nothing to obstruct his view of the street ahead of him and that he was at all times looking straight ahead; but when asked whether or not he saw the deceased at any time prior to the impact, the driver testified, "It is blank to me. I don't recall. The only thing I recall is the impact." In answer to an interrogatory as to what happened to the deceased when the automobile came in contact with him, the defendant driver stated, "Well, I have a recollection of his body going against my windshield. I don't know exactly what happened it all happened so quickly, but I do remember seeing the body come up to the car and off." In explanation of his lapse of memory concerning the incidents leading up to the happening of the fatality, the defendant driver testified that the accident completely unnerved him; that he suffered profound shock, inability to sleep and loss of memory, all of which explanation may be summarized by his answers given to the following queries:

"Q. By the Court: In what way did that shock manifest itself? There are many kinds of shock. In what manner did it manifest itself to you? A. I couldn't remember regarding the accident. All I could remember was the impact and a few incidentals like pulling on the brake. Q. By Mr. Betts (Attorney for defendant employer): What was the last time before your memory goes more or less blank? A. I remember putting on the brakes. That is about all. Q. Well, about that, do you remember traveling westerly after you

passed Alvarado? (The second street east of Grand View Street.) A. No, sir. Q. So that that blank goes back in your mind? A. Yes.''

That the defendant driver was in a very upset condition nervously immediately following the accident was testified to by a police officer who investigated at the scene thereof.

The only other eye-witness of the accident, John E. Smith, called by the defendants, testified that he was sitting with his grandchild at the southwest corner of the intersection of Sixth and Grand View Streets. This witness testified that he saw the deceased from the time the latter stepped off the sidewalk into Sixth Street; that the decedent walked cater-corner across the street and was not within any marked or unmarked crosswalk at the time he was struck. When asked by the court to indicate the decedent's course of travel, Mr. Smith testified, ''As I say, an angle of forty-five degrees, coming across here toward this point here.'' (Indicating.) Suffice it to say that this witness testified unequivocally that the deceased was crossing the intersection of Sixth and Grand View Streets at an angle and not within any kind of crosswalk. The point of impact as fixed by this witness was slightly in excess of 20 feet west of the prolongation of the easterly side of Grand View Street, well without and west of any pedestrian crosswalk. Skidmarks were found running east and west on the north side of Sixth Street. One of these marks was 48 feet long, and the other 52 feet long.

We deem it unnecessary to here set forth in detail the rule governing the power of a trial court to direct a verdict, as the same has been before the courts of this state on many occasions and is firmly established by *Estate of Lances*, 216 Cal. 397, 400 [14 Pac. (2d) 768], and *Estate of Flood*, 217 Cal. 763, 768 [21 Pac. (2d) 579]. In analyzing the proof to determine whether it contains evidence of sufficient substantiality to support a verdict for plaintiff if such verdict were returned, we must disregard the fact that there is a conflict in such evidence and give full credit only to that portion of the evidence which tends to support the allegations contained in plaintiff's complaint. We cannot, nor was the trial court authorized, in determining the motion

for a directed verdict, to weigh the evidence or judge of the credibility of witnesses.

Where, as in the instant case, death has ensued as a result of the accident, thereby sealing the lips of the injured party, the surviving spouse as plaintiff in the action for the alleged wrongful death, was entitled to invoke the aid of certain presumptions indulged in by law. The presumption is that every person obeys the law; that every person takes ordinary care of his own concerns, and that a person is innocent of crime or wrong. (Code Civ. Proc., sec. 1963, subds. 1, 4 and 33.) There was therefore present in this case the presumption that decedent, while crossing through the intersection, was at all times exercising the requisite degree and amount of care for his own safety by looking in the direction from which danger could be anticipated, and also that he was obedient to the provisions of subdivision (a) of section 562 of the Vehicle Code if he was crossing the street at a point other than within a marked or unmarked crosswalk. (*Hatzakorzian* v. *Rucker-Fuller Desk Co.*, 197 Cal. 82 [239 Pac. 709, 41 A. L. R. 1027]; *Hollowell* v. *Cameron*, 186 Cal. 530 [199 Pac. 803]; *Crabbe* v. *Mammoth Channel G. Min. Co.*, 168 Cal. 500, 506 [143 Pac. 714]; *Drouillard* v. *Southern Pacific Co.*, 36 Cal. App. 447 [172 Pac. 405]; *Ross* v. *San Francisco-Oakland Terminal Railways Co.*, 47 Cal. App. 753, 761 [191 Pac. 703]; *Little* v. *Yanagisawa*, 70 Cal. App. 303, 306 [233 Pac. 357]; *Broun* v. *Blair*, 26 Cal. App. (2d) 613 [80 Pac. (2d) 95].)

True, where facts are admitted or established by proof which is irreconcilable with the presumption, the latter loses its evidentiary value. Nevertheless the presumption is a species of indirect evidence (Code Civ. Proc., sec. 1957), and will prevail in and control the deliberations of the jury unless it is overcome by satisfactory evidence. When, as in the case at bar, direct evidence of an eye-witness was introduced to establish as a fact conduct and behavior on the part of the decedent at variance with and contrary to the presumption, the disputed fact nevertheless remains to be considered and determined upon all the evidence, including the presumption. Indeed, section 2061, subdivision 2, of the Code of Civil Procedure admonishes the trial judge upon all proper occasions to instruct the jury that "they are not bound to decide in conformity with the declarations of any number

of witnesses, which do not produce conviction in their minds, against . . . a presumption. . . . ''

In urging that the direct evidence furnished by an eye-witness in this case dissipated the presumptions established by law, respondents fail to appreciate the limitations upon the power of the trial court when directing a verdict as such limitations are laid down in *Estate of Flood* and *Estate of Lances, supra.* Under the familiar rules there enunciated, when there is a showing on behalf of the plaintiff of certain facts—as in the instant case, certain physical facts, such as skid marks and their relation to the point of collision and the point at which the driver first applied his brakes; the speed of the automobile; the failure of the driver to sound his horn or otherwise give warning; the unobstructed view of deceased on the part of the driver for some considerable distance; the clearness of the weather and the dryness of the street—together with the presumptions relied upon; and when on the other hand, evidence both direct and circum-stantial, favorable to their cause, is introduced by defend-ants, the latter evidence must be eliminated from considera-tion by the court for the purpose of ruling upon a motion for a directed verdict. (*Smellie* v. *Southern Pacific Co.*, 212 Cal. 540 [299 Pac. 529].) We therefore conclude that appellant was entitled to the benefit of the presumptions here claimed until dispelled by evidence opposed to them, and that it was for the jury to determine whether the presumptions had been overcome by evidence offered in contradiction thereof, which last-named evidence the court was not permitted to consider in ruling upon the motion for a directed verdict.

Cases cited by respondents in support of their claim that the presumption is destroyed by evidence in contradiction thereof are all cases where appeals were taken from final judgments, in the rendition of which the court or jury was entitled to pass upon the weight of all the evidence submitted and to judge of the credibility of witnesses. Such power is not within the province of a court in ruling upon motions for nonsuit or directed verdict.

Respondent argues that by the provisions of section 562 (a) of the Vehicle Code, the decedent was required to yield the right of way to all vehicles on the roadway. With-out doubt, if the decedent was crossing the intersection out-

side of a marked or unmarked crosswalk, he was so required, but by the provisions of subdivision (b) of the same section the defendant driver was not absolved from the obligation to exercise due care. (*Watkins* v. *Nutting,* 17 Cal. (2d) 490 [110 Pac. (2d) 384]; *Quinn* v. *Rosenfeld,* 15 Cal. (2d) 486, 491 [102 Pac. (2d) 317].) The evidence in the case before us points unerringly to the fact that the accident occurred in broad daylight with the weather clear and the view of the driver unobstructed from the time he passed through the intersection east of the one at which the fatality occurred. The aforesaid duty imposed upon the defendant by the provisions of the Vehicle Code would be breached if under the circumstances he failed to see, when an ordinarily prudent person, situated as he was and using due care, would have seen. The driver of a vehicle is not guilty of negligence under the circumstances here shown if he did those things which a reasonably prudent person would have done under similar circumstances. Neither was the decedent guilty of contributory negligence if, seeing what he saw and knowing what he knew, his behavior and conduct was the equal of that of an ordinarily and reasonably prudent person. And, it must be remembered that the law requires that a driver shall always maintain a vigilant watch for other persons and vehicles using the highway. Under the facts disclosed in the instant case, the jury might have concluded that the driver of the automobile failed to perform his requisite duty and that such failure was the proximate cause of the fatal injuries sustained by the decedent.

We are unable to say that before crossing the street the deceased should have waited for a vehicle to pass which was approaching at a speed not in excess of thirty miles per hour, practically in the middle of the street, with unimpaired opportunity on the part of the driver to see the pedestrian at a distance within which he could have either stopped his automobile or turned the same to the right and thereby avoided the accident. On the record presented to us herein, we feel that the question whether decedent's behavior and conduct, that is to say, whether he looked, either did not see the approaching automobile, or saw it and misjudged either its speed or distance, constituted contributory negligence under the particular circumstances then existing, was one of fact, as was also the question whether decedent's con-

duct measured up to the requirements of that of a reasonable man in complying with the aforesaid Vehicle Code provision. The question of contributory negligence is always one of fact for the jury to decide under proper instructions, except in those cases in which, judged in the light of common knowledge and experience, there is a standard of prudence to which all persons similarly situated must conform. It is only in these last-named cases that failure to adhere to that common standard is as a matter of law contributory negligence. Where different conclusions may reasonably be drawn by different minds from the same evidence, the decision must be left to the triers of fact. Therefore, under the facts and circumstances here present, the questions of the negligence of the defendant and the contributory negligence of the deceased, as well as the important question of proximate cause, were all for the jury to determine in the light of all the facts, circumstances and presumptions presented by the evidence.

It should be understood that throughout this opinion we have followed the rule applicable to cases where the appeal is taken from a judgment following a directed verdict or nonsuit, which rule requires that evidence, and presumptions as a species of evidence, shall be taken by the appellate tribunal in the light most favorable to the losing party in the court below. We are therefore expressing no opinion as to the weight of the evidence or its truth or falsity.

For the foregoing reasons, the judgment is reversed and the cause remanded for a new trial.

Doran, J., concurred.

YORK, P. J., Concurring.—I concur in the conclusion reached.

A petition for a rehearing was denied October 29, 1941, and respondents' petition for a hearing by the Supreme Court was denied December 1, 1941.