[L. A. No. 3222. Department One.—December 3, 1913.]

# D. AUGUSTA TOUSLEY, Respondent, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Appellant.

Negligence—Interurban Railway—Collision With Automobile at Crossing—Negligence not Question of Law.—In an action for personal injuries received in a collision at a railroad crossing between an interurban train and an automobile in which the plaintiff was riding as a guest of the owner, it cannot be held, as a matter of law, that the railway company was not guilty of negligence where the evidence shows that the train was traveling at the rate of forty miles an hour at the time of the accident, that no device was used to warn those approaching the crossing of the proximity of trains, that the crossing was one much used by automobiles, and that the view of approaching trains was to some extent obstructed by a line of trolley poles set between the tracks.

Id.—Speed of Train at Crossing—Whether Excessive—Question for Jury.—The question whether a rate of speed of an interurban train at a crossing is so dangerous or excessive as to constitute negligence depends upon the particular circumstances there existing; if they are such that reasonable and impartial men may well differ as to whether the speed maintained at the particular place showed a want of reasonable care, the question as to whether the railroad company was guilty of negligence in maintaining such speed is one for the jury.

Id.—Negligence of Driver of Automobile—Whether Imputed to Guest Riding Therein.—The negligence of the driver of an automobile in crossing an interurban railway track cannot be imputed to a person riding with him as a guest and having no control over the operation of the machine.

Id.—Instructions—Disregard by Jury—Review on Appeal.—While the jury should conform to the instructions of the court upon matters of law, yet if it appears to the appellate tribunal that an instruction was erroneous, it will not disregard a verdict contrary to such erroneous instruction.

Id.—Contributory Negligence of Person in Automobile—Instructions to Jury.—In an action against an interurban railway company for injuries sustained by a person riding in an automobile by a train striking the machine at a crossing, a portion of a lengthy instruction on the subject of contributory negligence that "in law, to sustain the defense of contributory negligence on the part of the plaintiff, it must appear from the evidence that it was the personal

failure of the plaintiff to exercise ordinary care that caused her injuries," is not erroneous, where the instruction fairly taken as a whole means no more than that to sustain the defense of contributory negligence on the part of the plaintiff, she personally, as distinguished from the driver of the automobile, must have been guilty of want of ordinary care contributing to her injuries, if the jury finds she was but a guest and had no control over the driver.

ID.—PERSON IN SUDDEN PERIL—STANDARD OF CARE REQUIRED—INSTRUCTIONS.—An instruction in such case, which, fairly considered, tells the jury that the conduct of the plaintiff, when she found herself placed in sudden peril by the negligence of the defendant, was to be judged in view of the circumstances and surroundings, and not by the standard applicable to one not conscious of being in a position of danger, is not objectionable.

ID.—NEGLIGENCE—PERSON IN GREAT PERIL—DEGREE OF CARE EXACTED. A person in great peril, when immediate action is necessary to avoid it, is not required to exercise all that presence of mind and carefulness which are justly required of a careful and prudent man under ordinary circumstances.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

J. W. McKinley, Frank Karr, R. C. Gortner, and W. W. Webster, for Appellant.

E. B. Drake, for Respondent.

ANGELLOTTI, J.—Plaintiff obtained judgment against defendant for two thousand five hundred dollars, in an action brought by her to recover damages for personal injuries alleged to have been received through the negligence of defendant. We have here an appeal by defendant from such judgment, and from an order denying its motion for a new trial.

The injuries suffered by plaintiff were received in a collision between an automobile in which she was riding as a guest of its owner and a two-car interurban train of defendant running from the city of Long Beach to the city of Los Angeles. The accident occurred about two o'clock P. M. on Sunday, May 7, 1911, at the crossing of Hill Street over the double

tracks of defendant at the northerly city limits of Long
Beach. A Mr. Loftus, the owner of the automobile, was driv-
ing, and seated with him on the front seat was the grandson
of plaintiff, while Mrs. Loftus and plaintiff occupied the rear
seat. They had been proceeding northward from Long Beach
to Los Angeles along American Avenue, and on reaching Hill
Street it was necessary to turn into that street and go over
the tracks of defendant which there crossed Hill Street. On
approaching the crossing, Loftus reduced the speed of his
machine, turned to make the crossing, and at a rate of speed
from two to four miles an hour, ascended a slight grade of
about eighteen inches to the westerly track. According to
his testimony, it was not until he had partially passed over
that track that he became aware of the approach of defend-
ant's train on the easterly track. The train was then only
some two hundred and fifty or three hundred feet away, com-
ing at a rate of speed variously estimated at from thirty-five
to fifty miles an hour. The evidence was such as to fully
warrant the conclusion that it was traveling at the rate of as
much as forty miles an hour, or nearly sixty feet a second.
According to his testimony, Loftus put on his emergency
brake and disconnected his clutch, but the machine moved
forward far enough to be struck by the train and to be thrown
over thirty feet away.

It is earnestly contended by defendant that there is no
foundation in the evidence for any finding of negligence on
its part. Except where its tracks crossed streets, defendant
was operating its train over its own private right of way. For
certainly much more than one thousand feet from Hill Street
southerly, the tracks of defendant were straight and on level
ground. There was nothing at Hill Street to interfere with
the vision of any one approaching the tracks on either side for
that distance except the trolley poles located in the nine-foot
space between the two tracks, at intervals of about ninety feet,
and a little station building about eight by ten feet in size
on one side of the westerly track, about one thousand
feet away. The trolley poles averaged about twelve inches
in diameter. There was evidence indicating that to one stand-
ing near the westerly rail of the westerly track at the Hill
Street crossing, these poles presented a continuous obstruction
to the vision from a point say four or five hundred feet dis-

tant, so far as the easterly track was concerned, the poles so running together as the distance from one so standing near the rail referred to increased, as to present to his vision an impenetrable wall from a point four or five hundred feet distant. Of course, the further to the west from such rail that one stood, the further away would be the point at which the poles would so run together as to completely obstruct his view of the easterly track. There was evidence from which it might properly be concluded that the station or waiting room would for a moment prevent one approaching the westerly track from seeing a car on the easterly track in its vicinity. As we have said, this accident occurred on a Sunday afternoon. The crossing was one much used by automobiles going to and from Long Beach, and naturally there was more of this on Sunday than on other days. Apparently there was no device at the crossing to warn those approaching it of the proximity of cars of the defendant. There was testimony of such a nature as to legally support a conclusion that no whistle was sounded or bell rung until the warning whistle was given when the approach of the automobile was discovered by the motorman on the train, which was apparently at or after the time that Loftus saw the train and was endeavoring to stop his machine. As we have said, the jury was warranted in concluding that the train was going at the rate of forty miles an hour, or about sixty feet a second.

We do not think that it can fairly be held, as matter of law, that the defendant was not guilty of negligence in view of the circumstances stated. It is said that the only negligence asserted is the excessive speed of the train, and that a rate of speed of thirty-five or forty miles an hour for an interurban train at and near the point where the accident occurred is not so excessive as to constitute negligence. As was said in *Bilton* v. *Southern Pacific Co.,* 148 Cal. 443, 447, [83 Pac. 440], "there can be no doubt that the question as to whether or not a rate of speed at a crossing is so dangerous or excessive as to constitute negligence must depend upon the particular circumstances there existing, and if the circumstances are such that reasonable and impartial men may well differ as to whether the speed maintained at the particular place showed a want of reasonable care, the question as to whether the railroad company was guilty of negligence in maintaining such

speed is one for the jury'' (citing authorities). It is true
that in the Bilton case the evidence was of such a nature as to
show a more dangerous crossing than that in the case at bar.
But we do not feel warranted in holding that the circum-
stances appearing in this case were not such that reasonable
and impartial men might not well differ on the question of
defendant's negligence. We have here a public street in a
fairly populated neighborhood, the photographs in evidence
showing at least six houses fronting on American Avenue
within one thousand feet, crossing the tracks of defendant; a
crossing much used by automobiles and other vehicles, espe-
cially on Sundays; a crossing apparently without any device
to warn those approaching it of the proximity of trains or
cars of the defendant; a line of poles twelve inches in diameter
at intervals of ninety feet between the two tracks, which neces-
sarily must more or less obstruct the vision of one approach-
ing the crossing, so far as the track on the other side is con-
cerned, from a point a few hundred feet from the crossing;
a small waiting room or station about one thousand feet from
the crossing which had the effect of shutting out for a moment
at least from the view of one approaching the crossing from
the westerly side, anything on the easterly track of defend-
ant just below such structure; the failure to sound a whistle
or give other indication of the approach of the train until
within two or three hundred feet of the crossing. The evi-
dence was such as to legally support a conclusion that all these
circumstances existed. Assuming the situation to have been
as described, as we must do, in view of the verdict, we are
clearly of the opinion that it may not be held, as matter of
law, that defendant was not guilty of negligence. And, if
this be so, the findings of the jury, and the conclusion of the
learned trial judge on motion for new trial, so far as this
question is concerned, are conclusive upon us.

It is claimed that the driver of the automobile and plaintiff
were both guilty of contributory negligence. In response to
a special interrogatory submitted, the jury found that Loftus
used ordinary care at the time of the accident. No interroga-
tory was submitted as to plaintiff, but the general verdict in
her favor necessarily, in view of the instructions to the jury,
implies a finding in her favor on the question of contributory
negligence. It is unnecessary here to consider the question

of the correctness of the finding as to Loftus. As already stated, plaintiff was simply a guest of Mr. Loftus on this ride, and he was in no way subject to her control or under her supervision or direction as to the manner in which the automobile should be operated. Under such circumstances, any negligence of Mr. Loftus could not be imputed to her. As said in *Fujise* v. *Los Angeles etc. Ry. Co.*, 12 Cal. App. 207, 211, [107 Pac. 317], "in order that contributory negligence shall prevent the recovery of damages for a personal injury, it must appear that the negligence is that of the injured person or of some one over whom he exercises some control." The only question in this connection, so far as plaintiff is concerned, is whether she exercised ordinary care for her own safety. (See *Thompson* v. *Los Angeles etc. Railway Co.*, 165 Cal. 748, [134 Pac. 709]; *Fujise* v. *Los Angeles Ry. Co.*, 12 Cal. App. 207, [107 Pac. 317]; *Bresee* v. *Los Angeles T. Co.*, 149 Cal. 131, [5 L. R. A. (N. S.) 1059, 85 Pac. 152].) We have considered the evidence bearing on this question, and find no warrant whatever for holding that, as matter of law, she was in any way negligent.

It is claimed that the verdict and special verdict are against law simply because they are in violation of two certain instructions given to the jury on the question of contributory negligence. It is manifest from a reading of these instructions that they could in no degree have prejudiced defendant's cause. An objection of this character assumes that an instruction relied on is not correct as matter of law, but that under it the party objecting was nevertheless entitled to a verdict, and that for the failure of the jury to observe it, he is entitled to a reversal. This was the rule declared by this court in *Emerson* v. *County of Santa Clara*, 40 Cal. 543, and one or two subsequent cases. This rule has been entirely discredited and overruled in later cases. The rule now is "that while the jury should conform to the instructions of the court upon matters of law, if it appears to the appellate tribunal that an instruction was erroneous, it will not disregard a verdict contrary to such erroneous instruction." (See *O'Neill* v. *Thomas Day Co.*, 152 Cal. 357, [14 Ann. Cas. 970, 92 Pac. 856].) "The fact that the court erroneously instructed the jury to the contrary does not make the verdict

against law.''    (*O'Neill* v. *Law Union etc. Co., ante,* p. 318, [135 Pac. 1124].)

Complaint is made of a portion of an instruction given on the subject of contributory negligence, reading as follows: ''but in law to sustain the defense of contributory negligence on the part of the plaintiff, Mrs. Tousley, it must appear from the evidence *that it was the personal failure of the plaintiff to exercise ordinary care that caused her injuries.''* This was a portion of a somewhat lengthy instruction informing the jury substantially that if plaintiff was riding in an automobile then owned and driven by Mr. Loftus, and if she had neither control of nor right to control him, the carelessness of the driver, if any, contributing to the injuries of plaintiff, could not be imputed to her so as to constitute contributory negligence on her part; but in such case to sustain the defense of contributory negligence on her part, it must appear as above stated. The portion complained of was immediately followed by this: ''and you are therefore instructed that if you believe that at the time of the accident the plaintiff used ordinary care—that is, the care that an ordinarily prudent person would have exercised under the same or similar circumstances—then you cannot find that she has been guilty of contributory negligence.'' The instruction fairly taken as a whole means no more than that to sustain the defense of contributory negligence on the part of Mrs. Tousley, she personally, as distinguished from the driver of the car, must have been guilty of want of ordinary care contributing to her injuries, if, of course, the jury found that she was but a guest of the driver, and had no control or right of control over him. We do not think that it is fairly susceptible of the construction claimed for it by defendant, or that it could have been understood by the jury in any other way than we have stated.

We see no good objection to the instruction marked ''Court's 27.'' Fairly considered it told the jury no more than is conceded by learned counsel for defendant to be the law, viz.: that the conduct of the plaintiff when she found herself placed in sudden peril by the negligence of the defendant, if she was so placed, was to be judged in view of the circumstances and surroundings, and not by the standard applicable to one not conscious of being in a position of danger. The jury was told that she was required to use ordinary care to protect herself,

which, it was further told, was the care that an ordinarily prudent person would use under the same or similar circumstances, considering the danger, proximity of the car, speed of the car, her position in the automobile, and all other circumstances proven to have occurred at the time of the accident. "It must be remembered that a person in great peril, when immediate action is necessary to avoid it, is not required to exercise all that presence of mind and carefulness which are justly required of a careful and prudent man under ordinary circumstances." (*Harrington* v. *Los Angeles etc. Ry. Co.,* 140 Cal. 521, [98 Am. St. Rep. 85, 63 L. R. A. 238, 74 Pac. 17].)

We are of the opinion that the trial court was justified in refusing to give defendant's requested instruction No. 26. The instruction was clearly in part an instruction as to facts, an instruction upon matters that it was within the exclusive province of the jury to determine, in view of the evidence.

The judgment and order denying a new trial are affirmed.

Sloss, J., and Shaw, J., concurred.

Hearing in Bank denied.