[Civ. No. 1580.   Third Appellate District.—May 30, 1918.]

## GEORGE W. ELLIS, Respondent, v. CENTRAL CALIFORNIA TRACTION COMPANY (a Corporation), Appellant.

NEGLIGENCE — COLLISION AT RAILROAD CROSSING — EXCESSIVE SPEED OF TRAIN—QUESTION FOR JURY.—In an action by a passenger in an auto stage for personal injuries received from a collision with a freight train at a point where the highway crossed the railroad track, the question whether thirty miles an hour was an excessive rate of speed for the train when approaching the crossing was for the jury.

ID.—SIGNAL OF APPROACH OF TRAIN—QUESTION FOR JURY.—In such an action, the question whether the train sounded or gave any warning of its approach to the crossing was for the jury.

ID.—PLEADING—SUFFICIENCY OF COMPLAINT.—In such an action, the complaint states a cause of action where after alleging that the auto in which plaintiff was riding was a public conveyance, and after describing the crossing, it averred the defendant ran one of its trains across the highway in a negligent manner and at negligent speed, without giving any signals, so that plaintiff, while traveling with due care, was injured.

ID.—CONTRIBUTORY NEGLIGENCE—PLEADING AND EVIDENCE.—In an action for personal injuries, contributory negligence is a defense which may be set up, and if set up, must be supported by defendant.

ID.—OWNERSHIP OF AUTO—IMMATERIAL AVERMENT.—In such an action, it is not necessary that the complaint should show who was the owner or driver of the auto at the time of the collision.

ID.—DUE CARE—NEGLIGENT OPERATION OF TRAIN—PROPER ALLEGATIONS.—In such an action, allegations in the complaint that plaintiff was traveling with due care and that defendant ran its train across the crossing in a negligent manner and at negligent speed are not improper, as mere conclusions of law.

ID.—INJURY TO PASSENGER IN AUTO STAGE—NEGLIGENCE OF DRIVER NOT IMPUTABLE TO PASSENGER—LACK OF CONTROL.—In such an action, assuming that the driver of the auto stage was negligent, and that his negligence concurring with that of the railroad company brought about the collision and its results, the plaintiff cannot be charged with such negligence, having no authority or control over the driver.

ID.—CONDUCT OF PASSENGER UPON OBSERVATION OF DANGER—LACK OF NEGLIGENCE.—In such action, the passenger cannot be charged with negligence because on seeing the approach of the train he jumped from his seat on the side door of the stage into the middle of the car and held on to the front seat.

ID.—PERSON IN GREAT PERIL—CARE.—A person in great peril when immediate action is necessary to avoid it is not required to exercise all that presence of mind and carefulness which are justly required of a careful and prudent man under ordinary circumstances.

ID.—APPROACH OF RAILROAD CROSSING—DUTY OF TRAVELER.—It is the duty of a traveler on a highway approaching a railroad crossing to use ordinary care in securing a time and place to stop, look, and listen for coming trains, and he is negligent if he merely looks or listens, believing the people in charge of the train will ring the bell or sound the whistle.

ID.—EVIDENCE—ACTS OF OTHER PASSENGER.—In such an action, the court properly refused to strike out on defendant's motion the answer given by another passenger that he did not watch or notice other passengers and that he could see those in front of him glancing up and down the track, as the driver did.

ID.—CONFLICT OF EVIDENCE — PROOF BEYOND PREPONDERANCE — ERRONEOUS INSTRUCTION.—In such an action, where the evidence is contradictory, an instruction requiring proof beyond the preponderance of the evidence is erroneous.

ID.—AMOUNT OF VERDICT—INSTRUCTION.—In such an action, an instruction that if plaintiff was injured as described, the jury should render a verdict for full amount of "damages," not exceeding the amount prayed for, is not erroneous, as an unqualified direction to return a verdict for the full amount.

APPEAL from a judgment of the Superior Court of San Joaquin County. D. M. Young, Judge.

The facts are stated in the opinion of the court.

Arthur L. Levinsky, for Appellant.

Stuckenbruck & West, for Respondent.

HART, J.—On the twenty-eighth day of September, 1915, plaintiff was a passenger for hire on an automobile stage owned and driven by one Sam Ebel, traveling from Stockton to Lodi, along a public highway known as the "Cherokee Lane." At a point about three miles from Stockton, where the highway crosses the railroad track of defendant, the automobile collided with one of defendant's trains, which consisted of two cars. Plaintiff received injuries in the collision and brought the action to recover damages therefor. A jury returned a verdict in his favor for one thousand seven hundred dollars and judgment was entered against defendant for

that amount, from which judgment defendant prosecutes this appeal.

Briefly stated, the facts are: The crossing where the accident occurred is an exceedingly dangerous one. Going in a northwesterly direction, Cherokee Lane crosses defendant's railroad and immediately turns to the north. There are some trees, with dense foliage, immediately adjoining the right of way, which prevent a full view of the track. It is a place where it should be imperative that the driver of a vehicle should heed the admonition to "stop, look, and listen." The testimony, as well as a number of photographs introduced in evidence, showed that at the crossing there was the usual sign, reading, "Railroad Crossing"; that at a point about one hundred feet south there was a sign painted, "Danger. R. R. X.," and at about thirty feet farther south there was another sign on which was painted the word, "Railroad."

The owner and driver of the auto stage, Sam Ebel, for more than two months prior to the day of the accident, had been running his automobile between Stockton and Lodi, making six round trips each day. The automobile was a seven-passenger, six-cylinder, Pierce-Arrow. On the day of the accident it contained eight passengers besides the driver. The stage left Stockton at about 8 o'clock in the morning, and the collision occurred about fifteen minutes later.

Plaintiff was a stranger to the locality and the trip was his first one over the road, his destination being Lodi. Owing to the crowded condition of the stage, plaintiff sat on the door on the left-hand side with his feet inside of the machine. At a point about seventy-five feet south of the crossing plaintiff saw that they were approaching a railroad track. He testified that he looked up and down the track but could see no train; that the orchard trees grew within six or seven feet of the track at one point and that a train could not be observed until one was within about twenty feet of the track; that when he was about that distance from the track he saw the approaching train coming from the north; that it was traveling at about twenty-five miles an hour and that the automobile was proceeding at not to exceed six or seven miles an hour; that the driver, as quickly as possible, put on his brakes and swerved to the left. Plaintiff jumped to the center of the automobile and took hold of the back of the

front seat, and when he recovered his senses after the collision occurred he was lying on the roadway. He and the physicians who attended him testified as to the extent of his injuries.

One of the passengers, Henry Squires, called as a witness for the plaintiff, testified that when the stage was at a point at about three hundred yards from the crossing he for the first time observed a freight train standing on the siding located about three hundred yards above the crossing; that after that, owing to an obstruction of the view caused by houses and fruit trees, he was unable to see the freight train until the auto stage had reached a point about from twenty-five to forty feet of the track, when he again saw the freight train and that it was then moving and approaching the crossing; that thereupon he immediately warned the driver of the automobile of the approach of the train and that he (the driver) then immediately applied the brakes. Neither Squires nor, for that matter, any of the passengers testifying for the plaintiff heard a whistle blown.

D. McCoy, also a passenger on the auto stage, called as a witness for defendant, testified that he did not know how rapidly the automobile was traveling, but that at one time he said to the driver, "You are going too damn fast"; that when he first saw the train the automobile was going faster than the train was.

The train with which the stage collided had been standing on the siding mentioned waiting for a passenger train to pass. After it passed, the freight train backed out of the siding to the main track and then started toward Stockton. The motorman testified that he blew the crossing signal—two long and two short blasts—twice before reaching the crossing where the accident occurred, the last signal being given when the train was about one hundred feet from the crossing, and ending just before he reached it. The train crew testified that the speed of the train was from ten to fifteen miles an hour and that of the automobile about thirty. There was evidence that there was some wind blowing from a southerly direction and that the automobile was making considerable noise, which tended to explain why none of the occupants of the stage heard the whistle, if one was blown. There is a signal gong at the crossing, but the testimony was that it did not ring at or immediately before the time of the acci-

dent, but that it was covered with a sack to indicate that it was out of order.

There was evidence from which the jury were warranted in finding that the train, when approaching the crossing, was traveling at the rate of at least thirty miles an hour. Whether this was an excessive rate of speed when approaching a public crossing was a question for the jury, as was likewise the question whether the defendant's train sounded or·gave any warning of its approach to the crossing.

The appellant complains: 1. That the complaint does not state a cause of action in behalf of the plaintiff and that the order overruling its demurrer thereto was erroneous; 2. That the evidence does not support the verdict; 3. That certain rulings as to the evidence were erroneous; 4. That error was committed in the giving and the refusal to give certain instructions and in the modification of certain instructions proposed by the defendant and given to the jury as modified.

1. The objection to the complaint is without force. That pleading, after alleging that the automobile in which the plaintiff was riding at the time of the accident was a public conveyance, engaged in carrying passengers for hire, and after describing the crossing at which the collision occurred, avers: "That as plaintiff reached said crossing and while plaintiff and said automobile were at and on said crossing, defendant ran one of its trains, drawn by a car operated by electric power, across said highway at said crossing, in a negligent manner and at a great and negligent rate of speed, and without sounding any alarm, bell, or whistle, and without signal or warning· of any kind, so that by reaʳon thereof the said train struck ρlaintiff and said automobile, in which plaintiff was so riding as a passenger, and thereby injured and crushed plaintiff and damaged him in the following manner," etc. It is further alleged that when the accident occurred the plaintiff was "traveling with due care in said automobile." These allegations state a case of negligence. Learned counsel seems to be of the opinion, however, that all the facts and circumstances of the accident should have been set forth in the complaint for the purpose of showing that the plaintiff himself was not guilty of the negligence, if any there was, which was the immediate or direct cause of the damage sustained by him. But this would have necessitated

the pleading of the evidential facts, and no one knows better than the learned attorney for the defendant that thus the very first of the rules of pleading would have been violated. Moreover, contributory negligence in an action to recover for personal injuries is a defense which may be set up, and if so set up must be supported by the defendant. The burden of establishing it, when relied on as a defense, is always on the defendant.

The contention that the complaint should have shown who the owner or the driver of the machine was at the time of the collision is equally untenable. If the plaintiff was himself the owner or the driver of the automobile when the damage was done, either of those facts could have been shown under the claim that his negligence alone was directly responsible for the accident. The complaint, however, alleges, as we have seen, that the machine was run as a common carrier or public conveyance and that the plaintiff was merely a passenger in said machine. This was sufficient to justify the inference that he was neither the owner nor driver of the automobile, assuming, but by no means deciding, that that fact was important as a matter of pleading or necessary to be shown by the complaint.

Another point is that the allegations that the plaintiff "was traveling with due care" and that defendant "ran one of its trains . . . across said crossing in a negligent manner and at a great and negligent rate of speed," involve mere conclusions of law.

Of course, the rule is elementary that conclusions of law are ordinarily not permissible in pleading. But conclusions of fact drawn from the evidential facts involve the statement only of the ultimate facts. In a measure, it is often true that the statement of an ultimate fact involves the statement of a conclusion of law, as, for illustration, the statement in a complaint that "John Doe is indebted to Richard Roe" in a certain sum. This is, in a sense, the statement of a conclusion of law, but it has also always been held to constitute the statement of an ultimate fact—a fact which has been drawn from the evidential facts. So it is true here. The allegations that the plaintiff exercised "due care" in making the crossing and that the defendant ran its train "in a negligent manner and at a great and negligent rate of speed" are, in the last analysis, conclusions of law, but they are

no less conclusions of fact drawn from the facts and circumstances attending the collision, and are, therefore, the ultimate facts to be proved.

2. The jury were apparently justified in finding that the defendant's employees were negligent by failing to blow a whistle or give any other warning of the approach of the train toward the crossing, and was likewise justified in finding that, at the time the train approached and started over the crossing, it was traveling at a greater rate of speed than ordinary prudence would justify when passing over that part of a railroad track crossing a public and popularly used highway. The case, therefore, upon the facts, comes clearly within the doctrines of the cases of *Drouillard* v. *Southern Pac. Co.*, 36 Cal. App. 447, [172 Pac. 405], and *Ilardi* v. *Central California Traction Co.*, 36 Cal. App. 488, [172 Pac. 763], both recently decided by this court, and the cases therein cited.

Here, as in those cases, the plaintiff was a passenger in the vehicle which was struck by a railroad train. He was not the driver of the machine, nor the owner, and had no authority or control over the driver. Assuming the driver to have been guilty of negligence, there is no evidence that the plaintiff participated in or was a party to such negligence. There is no evidence that he volunteered advice to the driver as to the course he should follow after the moving freight train hove in sight of the driver and the passengers. In fact, there is no evidence that he did or said anything which contributed in any measure or in any way to any negligence of which the driver might have been guilty.

In the Ilardi case, *supra*, it is said: "The cases are quite uniform in the enunciation of the rule that a person riding as a passenger or guest in a vehicle driven by another may not be charged with the latter's negligence which has caused injury to the former, unless the passenger or guest has the right to exercise control over the driver of the vehicle, or 'in the eyes of the law may be said to possess such power of control (*Bryant* v. *Pacific Elec. Ry. Co.*, 174 Cal. 734, 739, [164 Pac. 385]), or unless it is made to appear that the passenger or guest himself actively participated in the negligence of the driver.'' (See, in addition to the cases above named, the following: *Pyle* v. *Clark*, 75 Fed. 644; *Thompson* v. *Los Angeles & S. D. B. Ry. Co.*, 165 Cal. 748, [134 Pac. 709]; *Wilson* v. *Puget Sound Co.*, 52 Wash. 522, [132 Am.

St. Rep. 1044, 101 Pac. 50] ; *Horne* v. *Minneapolis etc. R. R. Co.*, 62 Minn. 71, [54 Am. St. Rep. 616, 30 L. R. A. 684, 64 N. W. 102] ; *Bresee* v. *Los Angeles Traction Co.*, 149 Cal. 131, [5 L. R. A. (N. S.) 1059, 85 Pac. 152] ; *Fujise* v. *Los Angeles Ry. Co.*, 12 Cal. App. 207, [107 Pac. 317] ; *Parmenter* v. *McDougall*, 172 Cal. 306, [156 Pac. 460] ; *Clarke* v. *Connecticut Co.*, 83 Conn. 219, [76 Atl. 723] ; *Lininger* v. *San Francisco etc. R. Co.*, 18 Cal. App. 411, [123 Pac. 235] ; *Chadbourne* v. *Springfield St. Ry. Co.*, 199 Mass. 574, [85 N. E. 737].)

Assuming, then, that the driver of the machine was negligent and that his negligence concurring with that of the defendant brought about the collision and its results, the plaintiff cannot be charged with such negligence, but if not entitled to recover must have been shown to have himself failed to exercise ordinary care for his own safety. Such a showing the defendant failed to make.

As is to be observed, none of the passengers heard the train whistle or give any other warning indicating that it was moving, and the first notice the passengers had of its approach was after the trees obstructing a view of the train had been passed and the automobile was at a distance of from twenty-five to forty feet from the crossing. The plaintiff, who was sitting on the door of the machine, with his feet on the inside thereof, upon observing the train moving toward the crossing, immediately jumped to the center of the machine and took hold of the back of the front seat. What induced him to believe, as evidently he did for the moment believe, that he would be less liable to injury in the event of a collision by taking a position in the center of the machine than he would be in the position from which he jumped to the center the record does not show. The probability is that he himself could now give no rational reason for his change of positions in the machine. But that thus he intended and attempted to shield himself against personal injury, the jury had the right to believe; and in the absence of a showing that, under the circumstances of peril which surrounded him and which came upon him with a suddenness that would very naturally preclude the exercise of his best judgment as to what he ought to have done, he was guilty of some affirmative act of negligence, it was entirely for the jury to determine whether he did or did not exercise the care for his own

safety which the law required of him. The verdict implies that he did exercise such care.

It is often true that in cases of sudden circumstances of danger, a person does the very act that he ought not to do to save himself from being injured; but in those cases, where the party causing those circumstances has done so negligently and the injured person has not himself intentionally or from culpable carelessness contributed thereto, the latter will not be held to have been responsible for any injury he may sustain merely because he has not acted prudently or with good judgment in an effort to escape being hurt or killed. As was said, in *Tousley* v. *Pacific Elec. Ry. Co.*, 166 Cal. 457, [137 Pac. 31], quoting the syllabus: "A person in great peril, when immediate action is necessary to avoid it, is not required to exercise all the presence of mind and carefulness which are justly required of a careful and prudent man under ordinary circumstances." (See, also, Shearman & Redfield on Negligence, sec. 89; *Schneider* v. *Market St. Ry. Co.*, 134 Cal. 490, [66 Pac. 734]; *Stapp* v. *Madera Canal & Irr. Co.*, 34 Cal. App. 41, [166 Pac. 823].) But we are unable to perceive what the plaintiff could have done to have saved himself from injury. He might have jumped to the ground, it is true, but the peril attending such a move under the circumstances might have been equally as hazardous and dangerous as the course he did pursue. Indeed, it might have then appeared to him more dangerous to jump from the machine while it was moving at a pretty fair speed than to remain in it, for he had the right to suppose that the driver himself, who was familiar with the crossing, having passed over it many times, would exercise due care for the protection and safety of his passengers. In other words, he had the right at all times to trust to the driver of the automobile to avoid the ordinary dangers of the road, with which the driver was entirely familiar, and that even when so near the crossing as the machine was as the train was approaching he would or might take some action which would prevent what then might have appeared and probably did appear to be an impending collision between the train and the machine.

The cases cited by counsel for the appellant have no application to the facts of this case. They might be pertinent to the case of the driver of the automobile if he were plaintiff

here.   It should not be necessary to say that in none of them is it held that the negligence of the driver of a vehicle is imputable to a guest or passenger riding in such vehicle where injury has resulted from such negligence to the guest or passenger and where the latter has exercised due care for his own safety.

3. Two of the witnesses to the accident, George Bloodworth and P. S. Titus, were residents of Jacksonville, Florida, and their depositions were taken and introduced in evidence.   Before introducing these depositions, counsel for the defendant called a witness, one McCurry, a clerk in the office of the defendant at Stockton, by whom he sought to prove, and did prove, that said witnesses voluntarily went to the office of defendant shortly after the accident and likewise stated to McCurry that they had witnessed the accident and desired to give testimony as to the circumstances thereof.   The object of this testimony, as counsel explained it at the trial, was to negative the insinuation which he claimed was involved in the cross-interrogatories submitted to Titus and Bloodworth that they were not in California on the day of the accident.   The object thus sought to be attained by the testimony of McCurry was in fact accomplished, he having been permitted to testify that Titus and Bloodworth voluntarily went to him and stated that they saw the accident and wished to give their testimony then, and that he took them to the law offices of defendant's counsel, to whom they made a statement of the facts and circumstances of the accident as they saw it.   Further than this the court refused to allow McCurry to testify regarding that circumstance.   Counsel now complains that he was entitled to show all the facts and circumstances of the presence of Titus and Bloodworth in Stockton at the time, including details of their conversations concerning the accident.   There is no legal support for the objection here made to the court's ruling excluding further testimony as to the matter.   All that counsel stated at the trial that he desired to show by McCurry was testified to by said witness.   The fact is the depositions themselves showed that Titus and Bloodworth were in California at the time of the accident and witnessed it, and testimony of other witnesses that they were in this state at the time and were where they had an opportunity to see the accident would be admissible only where the other party had introduced proof by way of im-

peachment tending to show that said witnesses were not in California on the day the accident happened.

4. The court refused to strike out on motion of defendant the following answer, given by the witness Stone, a passenger in the automobile when the collision happened, in response to a question by plaintiff's attorney as to whether he (Stone) watched or noticed the other passengers as the train was moving toward the crossing: "Sure not. I was in the back. I could see those in front of me, but naturally looked up and down the tracks, and their heads bobbing, like glancing up and down the track the driver did." The ground of the motion, as stated by counsel, was that "what this witness did or saw is incompetent, irrelevant, and immaterial, the witness not being the plaintiff." It is here urged that the ruling on the motion was erroneous and prejudicial. We cannot see it that way. Obviously, the witness or any witness, whether a party to the action or not, is competent to give testimony as to any fact material and relevant to the issue of which he has obtained direct knowledge—that is, any fact which he has observed or acquired knowledge of through his own perception.

There are numerous other exceptions to rulings as to certain evidence which counsel insists constitute well-taken grounds for a reversal. These we have carefully examined and considered, and in none have we found prejudicial error.

5. The following instruction was requested by the defendant: "It is the duty of a traveler on a highway approaching a railroad crossing to use ordinary care in securing a time and place to stop, look, and listen for coming trains. *He should stop for the purpose of making such observations. It is his duty to use all of his faculties, and it is not enough if he merely looks or listens, believing that the people in charge of any approaching train will ring the bell, or sound the whistle.*" The court modified said instruction by striking therefrom the portion which we have italicized and as so modified read it to the jury. Counsel contends that the court in so modifying the instruction erred to the serious prejudice of the defendant's rights.

That the instruction as proposed contained a correct statement of the rule in the abstract, there can be no doubt (*Griffin* v. *San Pedro etc. R. R. Co.*, 170 Cal. 772, 775, [L. R. A. 1916A, 842, 151 Pac. 282]); and the portion

of the instruction given sufficiently stated the law of this case. But the instruction as a whole is not altogether applicable to a case of this character. While it was no doubt the duty of the plaintiff to look and listen and "to use all his faculties," to the end that he might exercise the required degree of care to protect himself against injury, it is manifest that he could not stop, since he was in the machine and had no authority over the driver, but was wholly subject to the control and actions of the latter. The modification of the instruction as indicated was not prejudicial, although we cannot perceive that any harm would have been done by giving it in its entirety.

6. Instruction No. 7, proposed by the defendant and disallowed by the court, contained a statement of the rule that the burden of proving the alleged negligence of the defendant as the proximate cause of plaintiff's injuries rested upon the plaintiff. The instruction correctly declared the law, but the rule as stated therein was covered by the court in other portions of its charge. Repeatedly the court told the jury that, to prevail in the trial, the plaintiff was required to prove his allegations of negligence by a preponderance of the evidence, and that unless he did so the defendant would be entitled to a verdict.

7. It is next contended that the action of the court in disallowing the following instruction involved prejudicial error: "The duty of taking added precautions to prevent a collision was not cast upon the motorman . . . by the mere fact that he saw an automobile, but he had the right to assume that the automobile would stop before attempting to cross the track."

The principle stated in said instruction was in effect declared in the following, which was given: "Those in charge of railway cars are not compelled to stop for an automobile approaching a railway crossing where there is nothing to indicate that the person or persons in charge of such automobile are unable to stop before going on such crossing, and nothing to indicate that they have not, or might not have seen the approaching train." Furthermore, the negligence charged against the defendant was in its failure to give a warning signal and in running the train at an excessive speed; and the court explicitly instructed the jury that, in arriving at a verdict, they were to confine themselves to the

consideration only of the negligence charged in the complaint, and that if the negligence so charged was not proved by the plaintiff to the required degree, they should find for the defendant.

8. The court refused to allow an instruction, preferred by the defendant, which, if given, would have told the jury that they could not find for the plaintiff unless the evidence satisfied them that he has proved the negligence relied upon by him *"beyond a preponderance of the evidence."* It is obvious that the italicized language of the proposed instruction does not correctly state the rule, which is, in civil cases, where the evidence is contradictory, that the decision must be made, not *beyond*, but *according* to the preponderance of the evidence. (Code Civ. Proc., sec. 2061, subd. 5.) It is true that a correct statement of the rule was embraced in the first part of the rejected instruction, but said rule having been elsewhere in the court's charge declared to the jury, it was manifestly unnecessary to repeat it.

9. Defendant's proposed instruction No. 19 would have told the jury that if the evidence showed that the plaintiff saw the "railroad crossing in ample time to have requested the driver of the automobile to stop before attempting to cross the . . . track . . . , and that plaintiff made no remonstrance or objection, but permitted the driver . . . to attempt to cross the . . . track, without stopping, looking and listening for the approach of a train thereon, then . . . the plaintiff is bound by the act of the driver . . . in not stopping, looking, and listening for an approaching train . . . and cannot recover."

The instruction does not state the law applicable to this case. The mere sight of a railroad crossing by a passenger of a vehicle approaching such crossing, where there is then present no apparent danger in making the crossing, does not make it the duty of such passenger to warn the driver of the crossing or of the near approach of the vehicle thereto. As the cases point out, a passenger has the right to assume that the driver will, in such a case, as, indeed, in all cases, exercise due care to avoid the usual or ordinary dangers of the road.

10. Instruction No. 22, requested by the defendant, but disallowed, in effect involved the statement of the proposition that the plaintiff would not be entitled to recover if it ap-

peared from the evidence that he was guilty of negligence which proximately contributed to the injury. The court in its charge clearly stated and explained that rule to the jury, and the rejection of said instruction was, therefore, not prejudicial.

11. There was no error in the action of the court in refusing to give defendant's proposed instruction No. 24. The court, had it adopted said instruction, would have declared to the jury the proposition that they were not at liberty to disregard the testimony of either the motorman or conductor of the train "simply because they were in the employ of the defendant," nor should the jury, for like reason, view the testimony of those witnesses with suspicion. The court instructed the jury that they were the sole judges of the effect and value of the evidence, and, further, that they were not at liberty arbitrarily to reject the testimony of any witness, but should attach to it such weight as in their judgment it was entitled to. This instruction was, of course, addressed to the testimony of all the witnesses testifying in the case, including the conductor and motorman of the defendant's train. There was, therefore, no necessity for or benefit to be derived from an instruction singling out particular witnesses and telling the jury that their testimony should not be arbitrarily or for capricious or unsubstantial reasons rejected or given no weight.

12. The last point made by the defendant to which special consideration should be given involves an attack upon plaintiff's instruction No. 3, which the court submitted to the jury. It is contended that said instruction involves an unqualified direction by the court to the jury to return a verdict for the full amount of damages asked in the complaint, if they found that the plaintiff had received the injuries complained of directly through the negligence of the defendant. We do not so understand the instruction. It in substance stated that if the jury found from the evidence that the plaintiff was injured as described in the complaint and directly through the negligence of the defendant, "then it is your duty to render a verdict in favor of plaintiff and against the Central California Traction Company for the full amount of plaintiff's 'damages,' *not exceeding, however, the amount prayed for in the complaint.*"

The word "damages" as used in the instruction as the same appears in the record before us was without doubt intended as the word "damage," and to mean "damage" and not "damages." As so understood, and as undoubtedly the jury must have understood it from the words immediately following the word "damages," to wit, "not exceeding, however, the amount of damages prayed .for in the complaint," the instruction simply and plainly means that, in case the jury found that the plaintiff had been injured through the negligence of defendant or its negligence concurring with that of the driver, the plaintiff would be entitled to ·full compensation for the *damage* (or injury) so sustained, .not exceeding the amount of damages prayed for in the complaint.

We have found no prejudicial error in the record and the judgment is, therefore, affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 29, 1918.