[Civ. No. 5001. Third Appellate District.—April 26, 1934.]

WILLIAM P. YEAGER, Respondent, v. J. O. BRAY et al., Appellants.

Redman, Alexander & Bacon, Neumiller & Ditz and Herbert Chamberlin for Appellants.

O'Connor, Fitzgerald & Moran and Foltz, Rendon & Wallace for Respondent.

PLUMMER, J.—The plaintiff began this action to recover damages for and on account of injuries received in an automobile collision, on the twenty-third day of February, 1932. The defendants had judgment. After the entry of judgment, the court, on the plaintiff's motion made upon all the grounds set forth in the codes, granted the plaintiff a new trial, specifying, among other grounds, the insufficiency of the evidence to support or justify the verdict of the jury. From this order the defendants are prosecuting this appeal.

The record shows that at about the hour of 7:45, on the morning of February 23, 1932, the plaintiff was driving

easterly on the state highway in the county of San Joaquin, a short distance west of the San Joaquin River; that at the same time, two trucks, one called the "Fageol" truck, driven by a man by the name of Kerry; the second truck called the "Reo" in the transcript, driven by the defendant John Melvin Hicks. It appears that these trucks were being driven in a westerly direction. The Fageol truck, driven by Kerry, was in advance of the Reo truck, and was traveling at the rate of about 18 miles per hour. The Reo truck, driven by the defendant Hicks, followed the Fageol truck for a considerable distance, and just before reaching the point where the collision occurred, attempted to pass the Fageol truck. The paved portion of the highway, along which the trucks were traveling, is shown by the record to be 20 feet in width. On the north side of the paved portion of the highway is a macadam strip 3.7 feet to 4 feet in width, and is abutted by a graveled shoulder 4 feet to 6.3 feet in width. To the south of the pavement is an oiled strip 3.3 feet to 3.5 feet in width, with an abutting graveled shoulder 3.6 feet to 4.5 feet. These figures show a possible width of the highway upon which trucks and automobiles, under stress of circumstances, may travel, of approximately 35 feet.

The morning in question was foggy so that vision was limited to a distance of between 250 and 300 feet. According to the testimony of the defendant Hicks, the highway was dry. According to the testimony of the plaintiff, the highway was wet. From the testimony that the morning was foggy, and that the highway was wet, the court had a right to accept the testimony of the plaintiff as being a correct statement, as it would be more probable that the highway would be wet, and to some extent, slippery, on a foggy morning, not far from the course of the San Joaquin River. After having crossed the San Joaquin River and followed the Fageol truck for a few hundred feet, the defendant Hicks turned the Reo truck to the left, with the expressed purpose of passing the Fageol truck. The defendant Hicks testified that the Fageol truck was traveling at a speed of 18 miles per hour, and that in turning to the left for the purpose of passing the Fageol truck he speeded the Reo up to 20 miles per hour, and at no time exceeded 21 miles per hour. The Fageol truck was loaded with hay and the

Reo truck with canned goods. Both trucks were pulling trailers; the Fageol truck and trailer loaded with baled hay occupied a space of 8 feet in width and a length of 52 feet; the Reo truck was of approximately the same width, and with the trailer covered a distance of 48 feet. The driver of the Reo truck, after pulling to the left for the purpose of passing the Fageol truck, sighted the approaching "Plymouth" car (being the car driven by the plaintiff), and according to his testimony, attempted to pull back to the right-hand side of the road in the rear of the Fageol truck, but for some reason or other did not succeed in doing so, and perceiving that a collision was about to occur between his truck and the oncoming Plymouth, turned sharply to the left and crossed over to the south side of the highway, leaving some space between the Fageol truck and trailer driven by Kerry.

The plaintiff's testimony is to the effect that he sighted the approaching trucks at about 250 or 300 feet distant, through the fog; that at the time he caught sight of the Reo truck he was possibly 200 feet distant, and at that moment the truck was only partly over the center line of the paved portion of the highway in its attempt to pass the Fageol truck; that at that time he was driving the Plymouth at approximately 30 miles per hour, and applied the brakes gently to lessen the speed of the car; that the highway was wet, and he could not apply his brakes with great force on account of the danger of skidding; and that until an instant or two before the collision, he thought that the Reo truck would pull back behind the Fageol truck and allow him to pass by on the proper side; but as the Reo truck was driven at an angle across the highway, it left an opening between the two trucks, and at that instant he applied his brakes with full force, in order, if possible, to stop his car, and steered to the open space between the two trucks. This space, however, was not of sufficient width, and the plaintiff's car came in contact with one of the wheels of the Fageol truck, causing the Fageol truck to turn to the left, and a collision also occurred beteen the two trucks. In the collision the plaintiff suffered severe personal injuries as well as the destruction of his car.

Upon this appeal it is contended that the injuries suffered by the plaintiff were due wholly to his own negligence, or contributory negligence in not immediately stop-

ping his car when he perceived that the Reo truck had turned to the left of the Fageol truck.

The granting or denying of a new trial on the ground that the evidence is insufficient to justify the verdict is so largely in the discretion of the trial court that its ruling will be upheld unless it appears that there has been an abuse of discretion. If there is any testimony sufficient to support a verdict for the opposing party, if believed by the trial court, the order granting a new trial will not be disturbed. The law relating to the granting of new trials and the limitation upon the powers of an appellate court in reviewing the order of a trial court are so fully set forth in the case of *Springer* v. *Pacific Fruit Exchange*, 92 Cal. App. 732 [268 Pac. 951], in an opinion written by Preston, Justice *pro tem.*, that reference thereto only is necessary and need not be elaborated upon herein.

Section 126 of the California Vehicle Act specifies: "That the driver of a vehicle shall not drive to the left side of the center line of the highway in overtaking and passing another vehicle proceeding in the same direction, unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction, and in any event the overtaking vehicle shall return to the right side of the highway before coming within 100 feet of any vehicle approaching from the opposite direction.

On the part of the respondent it is argued that the driver of the Reo truck, in order to comply with this section, should not have attempted to pass the Fageol truck unless there was a visible distance ahead of him of approximately a quarter of a mile. On the part of the appellant it is argued that 300 feet were sufficient.

The language of the driver of the Fageol truck in asking the defendant Hicks, as to why he was endeavoring to pass in a fog, heard by the trial court, expresses very forcibly the lack of judgment on the part of the defendant in attempting to pass under the circumstances. Hicks' testimony is to the effect that he speeded his truck up to 20 miles an hour, and at no time exceeded 21 miles. His testimony also is that the Fageol truck was running at a speed

of 18 miles an hour. Under such circumstances the Reo truck would just gain 2 miles on the Fageol truck in one hour, or a distance of 176 feet per minute, while the Fageol truck, traveling at 18 miles per hour, would move forward at the rate of 1585, and a fraction, feet per minute. The testimony shows one of the trucks with trailer covered a distance of 48 feet. The other truck with trailer covered a distance of 52 feet. The testimony is to the effect that the driver of the Reo truck was in the rear of the Fageol truck some 15 feet when he turned to the left in his attempt to pass the forward truck, and in order to turn in in front of the Fageol truck, a like clearance would be necessary to avoid a collision, and section 126 of the California Vehicle Act specifies that there must be an additional distance of 100 feet in front of the truck. These distances, when computed, total 230 feet. As we have stated, the Reo truck, traveling at 20 miles an hour, would gain on the Fageol truck only 176 feet per minute, during which time the Fageol truck, traveling at 18 miles an hour, would have covered a distance of 1585 feet. This calculation, carried to its conclusion, would show that in attempting to pass under such circumstances, the driver of the Reo truck should have had a clear vision ahead of at least a half a mile.

On the other hand, if the appellants' contention be accepted that the Reo truck was traveling at a rate of 30 miles an hour, it would have gained on the Fageol truck 17 feet per second, during which period of time the Fageol truck would have moved forward 26 feet, which, added to the distances required by the California Vehicle Act to afford safety in passing, would have necessitated a clear vision of something near 600 feet.

The testimony of all of the parties is to the effect that visibility was limited to between 250 and 300 feet. This résumé of the testimony, if accepted by the trial court, establishes absolutely the negligence of the defendant Hicks, the driver of the Reo truck owned by the defendant Bray.

It cannot be said, as a matter of law, that the plaintiff, as the driver of the Plymouth car, was guilty of contributory negligence at the instant of the collision. The testimony is to the effect that the driver of the Plymouth car was proceeding easterly at the rate of about 30 miles per hour.

guiding his car approximately in the center of the paved portion of the highway. Upon perceiving the approach of the trucks he turned the car to his right-hand half of the pavement, to wit, to the south half thereof, and slackened his speed gently. An instant after perceiving the approach of the forward truck, he observed the Reo truck turning to the left, about one-half of the cab of the Reo truck being visible as it so turned in the rear of the Fageol truck. Under such circumstances it is a question of fact as to whether the plaintiff, in the exercise of sound judgment as a reasonable man, was entitled to conclude that the Reo would drop back in the rear of the Fageol and not move forward in the perilous attempt to pass the Fageol truck. It must be remembered that as the Plymouth was moving easterly at the rate of 30 miles an hour, and the Reo truck was moving westerly at the rate of 20 miles per hour, the intervening space was being closed at the rate of 50 miles per hour. In other words, in every second of time, 73 feet of the distance between the Plymouth and the trucks was being eliminated. From the time that the driver of the Plymouth perceived the approach of the trucks, approximately three seconds of time elapsed before the instant of the collision.

Again, when the driver of the Reo truck, instead of falling in behind the Fageol truck, made the false move of driving across the highway diagonally to the south side, the testimony is to the effect that the Plymouth car was only 75 feet away, which would give only a trifle over a second of time in which to determine a course of action. At this instant the testimony is that the Plymouth driver applied the brakes forcibly in an attempt to stop his car, and as there appeared a distance between the two trucks, sought to escape the collision by driving through such opening. Not being of sufficient width, the collision occurred.

Under the circumstances which we have summarized herein, we think the following language contained in the opinion of this court written by Mr. Justice Hart, in the case of *Lawrence* v. *Goodwill,* 44 Cal. App. 440 [185 Pac. 781], not only applicable, but controlling here, to wit: "Common experience tells us that instances often occur in which appalling circumstances of imminent danger or peril

so suddenly and unexpectedly confront persons of ordinarily cool and calm temperament and judgment that they for the time lose their presence of mind, or so find themselves in a position in which they are required to make up their minds as to the best or safest course to adopt to avoid the disaster which such circumstances threaten commensurately with the suddenness with which they arise. This appears to be one of such cases; and the courts have uniformly held that in such cases, in which damages or injury has directly resulted from the exercise of an erroneous judgment in attempting to meet or overcome the peril of such circumstances, the party whose act has thus caused the injury will not be held actionably responsible or liable for any injury or damage so caused. Or, as this proposition is stated as follows, in *Tousley* v. *Pacific Elect. Ry. Co.*, 166 Cal. 457 [137 Pac. 31], quoting the syllabus: 'A person in great peril, when immediate action is necessary to avoid it, is not required to exercise all that presence of mind and carefulness which are justly required of a careful and prudent man under ordinary circumstances.' (See, also, Shearman & Redfield on Negligence, sec. 89; *Schneider* v. *Market St. Ry. Co.*, 134 Cal. 490 [66 Pac. 734]; *Stapp* v. *Madera Canal & Irrigation Co.*, 34 Cal. App. 41 [166 Pac. 823]; *Ellis* v. *Central Traction Co.*, 37 Cal. App. 390 [174 Pac. 407, 411].)'' That case also sets forth the rule, supported by abundant authorities, that whether the plaintiff did or did not, in this case, do all that he could reasonably have been expected to do, presents a question of fact for the jury, and upon a motion for new trial, of course, presents a question of fact for the court, and the trial court's conclusion thereon is binding upon appeal.

Other cases might be cited, but what we have set forth appears sufficient to show that the ruling of the trial court should be sustained, and while there is testimony in the record other than what we have set forth, upon this proceeding all that is necessary is to take from the record sufficient to show that the trial court did not abuse its discretion in entering the order appealed from.

The order is affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 25, 1934.